ISUZU MOTORS LIMITED,
et al., Plaintiffs,

v.

CONSUMERS UNION OF UNITED
STATES, INC., Defendant.

No. CV 97–5686 RAP RNBX.

United States District Court,
C.D. California.

April 9, 1998.

Christopher C. Spencer, Robert M. Buell, McGuire Woods Battle & Boothe, Richmond, VA, Mark V. Berry, Bowman & Brooke, Torrance, CA, Jonathan W. Lubell, Frank McClain–Sewer, Morrison Cohen Singer & Weinstein, New York City, Andrew M. White, Melvin N.A. Avanzado, White O'Connor Curry Gatti & Avanzado, Los Angeles, CA, Richard A. Bowman, Bowman & Brooke, Minneapolis, MN, for plaintiffs.

John J. Quinn, Patricia A. Libby, Craig N. Hentschel, Arnold & Porter, Los Angeles, CA, Barry G. West, Jessica D. Lazarus, Corey E. Klein, Gaims Weil West & Epstein, Los Angeles, CA, Patrick A. Dawson, Dawson & Huddleston, Marietta, GA, Michael N. Pollet, Pollet & Felleman, New York City, for defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6) AND 9(g)

PAEZ, District Judge.

### I.

### *Introduction*

This diversity action concerns defendants Consumers Union of United States, Inc. ("CU") and R. David Pittle's statements and publications regarding the safety of the Isuzu Trooper, a sport utility vehicle ("SUV") Plaintiffs Isuzu Motors Ltd. ("Manufacturer"), Isuzu Motors America, Inc. ("Importer") and American Isuzu Motors, Inc. ("Distributor") (collectively "plaintiffs" or "Isuzu") assert claims for (1) defamation from a continuing course of conduct; (2) defamation from specific publications; (3) product disparagement from a continuing course of conduct; (4) product disparagement from specific publications; (5) unlawful, unfair and fraudulent business practices under Cal. Bus. & Prof.Code; (6) intentional interference with business relations; and (7) declaratory relief.

Plaintiffs allege that beginning in August, 1996, and continuing to date, in both its magazine *Consumer Reports* and in numerous other print, broadcast and Internet publications, defendant CU made a series of false statements about Isuzu and the Isuzu Trooper to the effect that (1) the 1995–96 Trooper was and is more prone to tip up or roll over than all other SUVs; (2) the Trooper was and is dangerous and unsafe when operated in "real-world" conditions; (3) the 1995–96 Trooper was and is uniquely and inherently prone to tip up or roll over during "real-world" driving maneuvers; (4) Isuzu and its officials refused to meet with defendants to discuss and review defendants' purported test data regarding the Trooper's alleged safety problems; and (5) Isuzu and its officials were ignoring serious safety problems and knowingly placing consumers at grave risk, all in the name of profits.

Plaintiffs allege CU tested the Trooper the day after the National Highway Transportation Safety Administration ("NHTSA") rejected CU's proposed roll-over resistance standard for SUVs. Plaintiffs contend that CU used unscientific tests and unrealistic driving maneuvers to create dramatic tip-up effects with the Trooper, as compared with other SUVs, in order to demonstrate that the NHTSA was wrong to reject CU's proposed rollover safety standard.

■ Pending before the Court is the Motion of Defendants Consumers Union of United States, Inc. and R. David Pittle to Dismiss Plaintiffs' Claims for Relief pursuant to Rule [ ] ... 12(b)(6) and Rule 9(g) of the Federal Rules of Civil Procedure ("Motion") Defendants originally moved to dismiss on a number of grounds. The Court previously put aside defendants' 12(b)(6) motion to dismiss in light of the general rule that courts should "pass on jurisdictional issues before considering whether a claim [is] stated by the complaint." *See Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990). After the hearing on defendants' motion to dismiss or transfer venue under 12(b)(2) and 12(b)(3), plaintiffs resolved issues of personal jurisdiction and venue by dismissing defendant Pittle from the action. Accordingly, the Court now turns to defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 9(g). Upon consideration of the parties' papers submitted in conjunction with the motion, and the oral arguments of counsel, defendant CU's motion is **GRANTED IN PART AND DENIED IN PART** as set forth in detail below.

## II.

### *Factual Allegations*

Isuzu Motors Limited (the "Manufacturer"), which designs and manufactures the Trooper, is a Japanese corporation with its principal place of business in Japan. Isuzu Motors America, Inc. (the "Importer"), which imports the Trooper from Japan to the United States, is a Michigan corporation with its principal place of business in Cerritos, California. American Isuzu Motors, Inc. (the "Distributor") is a California corporation with its principal place of business in Whittier, California and is the sole distributor for the Trooper in the United States. Defendant CU is a citizen of New York. Complaint, ¶¶ 9–13.

Plaintiffs allege that the 1995–96 Trooper has a safety record comparable to safety records of other SUVs and that prior to defendants' defamatory statements no other publication had reported a "rollover problem" with the 1995–96 Trooper. *Id.*, ¶¶ 14–15. According to plaintiffs, prior to defendant's defamatory statements, CU was aware that its testing procedures had been rejected by the United States National Highway Transportation Safety Administration ("NHTSA") and by the Transport and Road Research Laboratory of Great Britain's Department of Transportation, among others, because CU's "Short Course" fails to reflect real-world conditions and is overly driver dependant, making it unreliable and unscientific. *Id.*, ¶ 16–25.

Plaintiffs allege that defendant "rigged" the Trooper test results by using different steering inputs and pathways through the Short Course and attaching "outriggers" to the test vehicle as part of defendants' campaign to force the NHTSA to establish a federal rollover safety standard. *Id.*, ¶ 26–28. Accordingly, plaintiffs assert that defendant knew its allegedly defamatory statements about the Trooper were false.

Plaintiffs set forth the allegedly defamatory statements at length in their 82–page complaint and 16 exhibits to the complaint. In brief, plaintiffs allege that defendant began a campaign that defamed them, beginning on August 20, 1996, by holding a press conference and by publishing (1) an August 20, 1996, press release announcing that Consumer Reports found the 1995–96 Trooper "Not Acceptable" because of a rollover hazard; (2) videotapes showing the Trooper during a June 6, 1996, "test run"; (3) a recorded telephone message at a toll-number; (4) a "full test report" in online databases and in *Consumer Reports* "Facts by Fax" service; (5) the October, 1996, issue of *Consumer Reports;* (6) Pittle's statements on several television programs, including NBC News, "Sunrise" and "Today" and CBS' "This Morning"; (7) the November, 1996, issue of *Consumer Reports;* (8) a December 23, 1996, press release and Internet posting and transmission via PR Newswire regarding CU's communications with NHTSA regarding the Trooper and CU's response to Isuzu's criticism of the CU findings; (9) the March, 1997, issue of *Consumer Reports;* (10) a May 14, 1997, press release entitled "Statement of Dr. R. David Pittle, Vice President and Technical Director Consumers Union (Publisher of *Consumer Reports* Magazine)," reiterating CU's Not Acceptable rating of the 1995–96 Trooper; (11) CU's 1997 Car Guide CD–Rom; (12) an article in the July, 1997, issue of *Consumer Reports* reiterating CU's statements about the Trooper; (13) a press release regarding the NHTSA July 25, 1997, order; (14) a July 27, 1997, Dow Jones News Service article quoting Pittle as saying he did not expect CU to retract its reports on the Trooper despite the NHTSA findings and Isuzu's request for a retraction; (15) a July 28, 1997, USA Today article reiterating Pittle's statements and CU's position; and (16) similar defamatory and disparaging false statements and images concerning Isuzu and the 1995–96 Trooper. *Id.*, ¶¶ 35–89.

Plaintiffs collectively contend that defendant published these statements regarding Isuzu with the intention of conveying false and defamatory meanings, including:

a. Isuzu and its officials were ignoring tip-up and rollover resistance safety and knowingly placing consumers at grave risk, all in the name of profits.

b. Isuzu is aware of a method of eliminating the risk of rollovers or tip-ups in the 1995 and 1996 Trooper at a minimal expense but refuses to implement that method.

c. Isuzu was and is not interested in (i) manufacturing, importing or selling to the public a safe product, (ii) learning about CU's "test" results, analyses and conclusions about the 1995–96 Trooper, (iii) making its products safe or (iv) correcting a dangerous condition in the 1995–96 Trooper.

d. Isuzu deliberately perpetrated a fraud on the public by manufacturing, importing and selling a vehicle which has an extreme and unique rollover propensity.

e. Isuzu knew that modification in the 1995–96 Isuzu Trooper significantly altered the Trooper's rollover resistance yet Isuzu fraudulently and dishonestly failed to inform the public of these substantial changes.

f. Isuzu knew changes in the 1995–96 Trooper from the previous Trooper model caused the 1995–96 Trooper to lack the rollover resistance present in all but one of the other vehicles defendants have tested.

g. Isuzu did not want to know if conclusions by its consultants about the inadequacies in CU's short course test of the 1995–96 Trooper were incorrect.

h. Isuzu was not and is not interested in protecting the lives and safety of its customers concerning the rollover resistance of the Trooper, but rather only in shielding its public image and making profits.

i. Isuzu has deliberately ignored a remedy suggested by CU which CU says could make the Trooper as safe under real-world driving conditions as other SUVs.

j. Isuzu continues to endanger the public by not recalling and stopping sales of the 1995–96 Trooper.

*Id.,* ¶ 90.

Likewise, plaintiffs contend defendant published the statements at issue regarding the 1995–96 Trooper with the intention of conveying false and defamatory meanings, including:

a. The 1995–96 Trooper was uniquely and inherently prone to roll over during driving maneuvers likely to be encoun-

tered under real-world driving conditions.

b. The 1995–96 Trooper was uniquely and inherently prone to tip-up on two wheels during driving maneuvers likely to be encountered under real-world driving conditions.

c. The 1995–96 Trooper was more likely to roll over than all other SUVs.

d. The 1995–96 Trooper was more likely to tip-up than all other SUVs.

e. The 1995–96 Trooper so uniquely lacks rollover resistance in real-world driving conditions that the government and Isuzu should not allow it on the road.

f. The 1995–96 Trooper's lack of rollover resistance is so dangerous that Isuzu should promptly repair or replace any such vehicles or provide consumers with a refund.

g. Unlike all other SUVs, the 1995–96 Trooper is so inherently and uniquely prone to roll over that it should only be driven when necessary and using extreme caution.

h. Unlike all other SUVs, the 1995–96 Trooper is so inherently and uniquely prone to tip-up on two wheels that it should only be driven when necessary and using extreme caution.

i. The normal reaction of a driver to a child running into the road would cause the 1995–96 Trooper to tip-up or roll over, while all other SUVs would not.

j. During the CU Short Course Maneuver, the 1995–96 Trooper, while driven under the same conditions as the all (sic) other SUVs, lifted its wheels off the road several times and threatened to roll over.

k. Only one other vehicle in eight years of CU testing over the Short Course Maneuver had the same lack of rollover resistance as the 1995–96 Trooper.

l. Only the driving skill of a professional test driver would prevent the 1995–96 Trooper from rolling over under real-world driving conditions.

m. Unlike all other SUVs, the 1995–96 Trooper will cause grievous bodily injury to occupants from rolling over under real-world driving conditions.

n. Unlike all other SUVs, the 1995–96 Trooper will cause grievous bodily injury to occupants from tipping up on two wheels under average driving conditions.

o. Even though the 300 pound outriggers CU attached to the 1995–96 Troopers made the Troopers more difficult to tip-up on the CU Short Course Maneuver, the Troopers tipped up on many occasions.

p. Suspension upgrades introduced by Isuzu Motors in 1995 made the 1995–96 Trooper uniquely and inherently lacking in rollover resistance, unlike prior Trooper models, and causes the vehicle to tip-up and rollover.

q. The 1995–96 Trooper would require modifications to its suspension to have comparable rollover resistance to all other SUVs.

*Id.,* ¶ 91.

CU made its report on the Trooper available in Consumer Reports areas of America Online, CompuServe and Prodigy and on CU's Facts by Fax service at 1–800–766–9988. *Id.,* Exh. 14 at 48. To distribute its statements concerning the Trooper, CU subscribed to several online servers, PR Newswire, Medialink and Business Wire. *Id.,* Exh. 17, 20, 21, 22, 23 and 26.

## III.

### *Discussion*

### A. Request for Judicial Notice

■ Upon the request of a party who provides the necessary information, a court shall take judicial notice of adjudicative facts not subject to reasonable dispute, including facts generally known in the district court's territorial jurisdiction and facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201. Plaintiffs' request for judicial notice is unopposed, and the Court takes judicial notice of the facts sets forth in plaintiffs' request, all of which concern publication of various television programs and newspapers in California and in this district.

### B. Motion to Dismiss

#### 1. *12(b)(6) Standard*

■ A motion to dismiss under Fed. R.Civ.P. 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Accordingly, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754 (9th Cir.1994). The court may, however, consider exhibits submitted with the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1989); *Emrich v, Touche Ross & Co.,* 846 F.2d 1190, 1198 (9th Cir.1988). "[A] document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned." *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994).

■ Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988) The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Development Corp.,* 108 F.3d 246, 249 (9th Cir.1997). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Barron v. Reich,* 13 F.3d 1370, 1374 (9th Cir.1994). The court is not required, however, to accept "conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg,* 18 F.3d at 754–55.

Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A.

Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). The notice pleading standard set forth in Rule 8 establishes "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan*, 108 F.3d at 248 (citations omitted). Consequently, a court may not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by the inclusion of additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

### 2. Choice of Law

In federal diversity actions, a federal court must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). California resolves conflict of law questions through a "governmental interest" analysis. *Reich v. Purcell* 67 Cal.2d 551, 554, 63 Cal.Rptr. 31, 432 P.2d 727 (1967). This approach requires the court to "find the proper law to apply based upon the interests of the litigants and the involved states." *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 161, 148 Cal.Rptr. 867, 583 P.2d 721 (1978). "A separate choice-of-law inquiry must be made with respect to each issue in a case." *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal. App.4th 881, 72 Cal.Rptr.2d 73, 82 (1st Dist. 1998).

Courts applying California's governmental interests test have established a three-part test:

Under this amorphous and somewhat result-oriented approach, we must first consider whether the two states' laws actually differ; if so, we must examine each state's interest in applying its law to determine there is a "true conflict"; and if each state has a legitimate interest we must compare the impairment to each jurisdiction under the other's rule of law.

*Arno v. Club Med. Inc.*, 22 F.3d 1464, 1467 (9th Cir.1994); *Page v. Something Weird Video*, 908 F.Supp. 714, 716 (C.D.Cal.1995). Thus, there is no conflict if the same outcome would be reached under the laws of each of the states involved. *Hurtado v. Superior Court*, 11 Cal.3d 574, 580, 114 Cal.Rptr. 106, 522 P.2d 666 (1974). Likewise, if only one state has an interest in the application of its laws, there is no "true conflict," and the law of the interested state is applied. *Id.* If at least two states have a legitimate interest, however, the court must determine to what extent each state's interest would be impaired if a particular jurisdiction's law were applied. *Id.* In applying this rule, "courts must consider the actual stake, as opposed to the hypothetical interest, that the potentially concerned states have in the litigation." *Camp v. Forwarders Transp., Inc.*, 537 F.Supp. 636, 638 (C.D.Cal.1982) (citing *Strassberg v. New England Mutual Life Insurance Co.*, 575 F.2d 1262, 1264 (9th Cir. 1978)).

In general, the law of the forum applies unless a party "timely invokes the law of a foreign state." *Sommer v. Gabor*, 40 Cal.App.4th 1455, 1467, 48 Cal.Rptr.2d 235 (2d Dist.1995) "As the forum, a California court will conclude that a conflict is 'false' and apply its own law unless the application of the foreign law will 'significantly advance the interests of the foreign state.'" *Rosenthal v. Fonda*, 862 F.2d 1398, 1402 (9th Cir. 1988).

Here, defendant has not satisfied its burden of showing significant differences between California and New York law. Defendant only raises a potential conflict of laws issue with respect to plaintiffs' product disparagement claims. Defendant assert that New York law requires a plaintiff to allege special damages specifically, by identifying customers or transactions lost as a result of disparagement, in order to state a prima facie case. Mem. at 18 (citing *Drug Research v. Curtis Publishing Co.*, 7 N.Y.2d 435, 440–41, 199 N.Y.S.2d 33, 166 N.E.2d 319 (1960)). Under California law, "a cause of action for damages for trade libel requires pleading and proof of special damages in the form of pecuniary loss." *Leonardini v. Shell Oil Co.*, 216 Cal.App.3d 547, 572, 264 Cal. Rptr. 883 (3d Dist.1990) (requiring plaintiff

to plead "specific pecuniary loss"). Under federal pleading requirements, "[w]hen items of special damages are claimed, they shall be specifically stated." Fed.R.Civ.P. 9(g). Because Rule 9(g) establishes that special damages must be specifically stated, and because both California and New York law require a plaintiff to plead special damages to state a claim for trade libel, the Court can discern no difference in the laws of California and New York that requires the Court to compare the respective interests of the states in having their own laws applied.

Because the Court must make a separate choice-of-law inquiry with respect to each issue in a case, *see Application Group, Inc.,* 72 Cal.Rptr.2d at 82, the ruling here does not extend to every potential choice of law question presented in this action. The Court notes, however, that the Ninth Circuit has previously addressed choice of law issues in the context of a defamation case, holding that:

> Each [state] has an interest in having its laws applied, due primarily to the fact that residents of each are parties to this action.... Without question, the district court was correct in concluding that in this case California's interest would be more impaired if its laws were not applied. New York is indeed the state in which the defendants both reside and in which the allegedly defamatory remarks were uttered. However, because California is the state in which both plaintiffs lived and worked throughout the transactions involved, it is the state where the damage to plaintiffs' reputations, if any, would have occurred. As the district court noted, New York has "absolutely no interest in the reputation of a California citizen." The fact that California is the forum state further strengthens our conclusion, for we have said that in cases of this nature application of the laws of the forum state is preferred.

*Matter of Yagman,* 796 F.2d 1165, 1170–71 (9th Cir.1986) Consequently, even if a true conflict does exist, the law of the forum is generally preferred in the absence of other governmental interests supporting selection of another state's law.

### 3. Defamation and Disparagement Claims

Although the defamatory torts of slander and libel are similar to what is known in California as "trade libel," the torts are distinct and must be treated individually. In brief, "an 'action for defamation is designed to protect the reputation of the plaintiff, and the judgment vindicates that reputation, whereas the action for disparagement is based on pecuniary damages and lies only where such damage has been suffered.'" *Leonardini,* 216 Cal.App.3d at 573, 264 Cal. Rptr. 883 (quoting 5 Witkin, *Summary of Cal. Law,* Torts, pp 661–62 (9th ed.1988)). Nonetheless, "First Amendment limitations are applicable to all claims, of whatever label, whose gravamen is the alleged injurious falsehood of a statement[.]" *Blatty v. New York Times Co.,* 42 Cal.3d 1033, 1045, 232 Cal.Rptr. 542, 728 P.2d 1177 (1986).

#### a. First Amendment Principles[1]

In defamation actions, the First Amendment requires the plaintiff to establish that the statement on which the claim is based is "of and concerning" the plaintiff. *Id.* at 1042, 232 Cal.Rptr. 542, 728 P.2d 1177; *see also New York Times v. Sullivan,* 376 U.S. 254, 288–89, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). To satisfy this requirement, "the plaintiff must effectively plead that the statement at issue either expressly mentions him or refers to him by reasonable implication." Id. at 1046, 232 Cal.Rptr. 542, 728 P.2d 1177 (finding failure to include Blatty's novel on best-seller list was not statement of and concerning Blatty).

#### b. Vicarious Defamation and Disparagement

The allegedly defamatory and disparaging statements underlying plaintiffs'

---

1. The Court previously granted the Washington Legal Foundation's application for leave to file a brief as amicus curiae in support of plaintiffs. The Court agrees with amicus counsel that it would be premature to determine, on a motion to dismiss, whether Isuzu is a public figure or whether the alleged statements were made with actual malice. Controlling precedent, including precedent regarding the First Amendment's limitations on defamation and disparagement claims, dictates this Court's disposition of the pending motion.

claims are only "of and concerning" the Trooper and, arguably, the manufacturer of the Trooper, Isuzu Motors Ltd., a Japanese Corporation. Looking at the statements in context, and considering the totality of the circumstances, the statements at issue all involve CU's allegations that the Trooper is dangerous because of the way it was manufactured. *See Couch v. San Juan Unified School Dist.*, 33 Cal.App.4th 1491, 1501, 39 Cal.Rptr.2d 848 (3d Dist.1995) (statements must be considered in context under totality of circumstances). None of defendant's statements are about the Distributor or the Importer. *See Simmons Ford v. Consumers Union*, 516 F.Supp. 742 (S.D.N.Y.1981) (First Amendment considerations preclude vicarious liability by anyone other than manufacturer in product disparagement suit); *American Suzuki Motor Corp. v. Consumers Union of the United States, Inc*, CV 96–340 AHS (EEx) "Order Granting Defendant's Motion to Dismiss; Order Permitting Filing of Amended Complaint" (Feb. 3, 1997). Defendant's publication of the Distributor's customer relations number in the context of its criticism of the Trooper cannot be reasonably understood to suggest that the Distributor is responsible for the supposed roll-over risk presented by the Trooper as a result of design changes. Finally, the fact that the Distributor and Importer share the name Isuzu with the manufacturer does nothing to revive their claims.

 Consequently, all defamation and disparagement claims by plaintiffs Isuzu Motors America, Inc. and American Isuzu Motors Inc. are dismissed with prejudice. In addition, the distributor and importer may not state claims for relief under California Business & Professions Code § 17200 or for intentional inteference with prospective business advantage based on alleged injurious falsehoods because the alleged falsehoods were not of and concerning either plaintiff. Under California law, "First Amendment limitations are applicable to all claims, of whatever label, whose gravamen is the alleged injurious falsehood of a statement." *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal.4th 553, 71 Cal.Rptr.2d 731, 950 P.2d 1086 (1998) (quoting *Blatty*, 42 Cal.3d at 1044–45, 232 Cal.Rptr. 542, 728 P.2d 1177 and reaffirming rule preventing "creative

pleading" from "rendering nugatory the First Amendment limitations placed on litigation against speech"). Consequently, the distributor and importer's claims for relief under § 17200 and for intentional interference with prospective business advantage are dismissed with prejudice.

Defendant is also correct that the Ninth Claim for Relief is based exclusively on statements that cannot be construed as referring to any of the three plaintiffs. *See* Complaint, ¶¶ 79i 79j. Accordingly, that claim is dismissed with prejudice.

### c. Defamatory Meaning

 Defendant moves to dismiss the defamation claims against the manufacturer on grounds that the alleged statements are not capable of conveying defamatory meaning or are not statements of fact or opinions based on provably false facts. Whether a statement is "reasonably susceptible of an interpretation which implies a provably false assertion of fact—the dispositive question in a defamation action—is a question of law for the court." *Couch*, 33 Cal.App.4th at 1500, 39 Cal.Rptr.2d 848. To resolve that question, the court considers whether the reasonable or average reader would interpret the statement, taken in context, to imply a false assertion of fact. *Id.; Norse v. Henry Holt & Co.*, 991 F.2d 563, 566 (9th Cir.1993) ("To discern whether a statement has a defamatory meaning, we interpret it from the standpoint of the average reader, [ ] judging the statement not in isolation, but within the context in which it is made.").

 On a motion to dismiss, "[the] court's inquiry is not to determine if the communication reasonably carries with it a defamatory meaning.... Just as the court must refrain from a 'hair-splitting' analysis of what is said in an article to find an innocent meaning, so must it refrain from scrutinizing what is not said to find 'a defamatory meaning which the article does not convey to a lay reader.'" *Church of Scientology of California v. Flynn*, 744 F.2d 694, 696 (9th Cir.1984) (quoting *Forsher v. Bugliosi*, 26 Cal.3d 792, 803, 163 Cal.Rptr. 628, 608 P.2d 716 (1980) (additional citations omitted)). Put simply, dismissal is improper if "by reasonable impli-

cation a defamatory meaning may be found in the communication." *Id.* at 696 (quoting *Forsher*, 26 Cal.3d at 806, 163 Cal.Rptr. 628, 608 P.2d 716). Nonetheless, it is appropriate to determine whether a statement is fairly susceptible of a defamatory meaning in response to a challenge to the pleadings. *Polygram Records, Inc. v. Superior Court*, 170 Cal.App.3d 543, 551, 216 Cal.Rptr. 252 (1st Dist.1985).

■ Here, plaintiff Isuzu Motors, Ltd. contends defendant has implied that (1) plaintiff knowingly altered the Trooper to make it unsafe; (2) plaintiff is not interested in 'fixing' the Trooper or learning about CU's testing; and (3) Isuzu does not care about the safety of its customers. None of the allegedly defamatory statements set forth in the complaint can be reasonably understood to imply that plaintiff was anything more than negligent in redesigning the Trooper. California law recognizes that

> [i]t might be possible to imply some accusation of personal inefficiency or incompetence, at least, in nearly every imputation directed against a business or product. The courts have gone to some lengths, however, in refusing to do so, particularly where the most that can be made out of the words is a charge of ignorance or negligence.

*Id.* at 256 (quoting Prosser & Keeton, Torts, § 128, p. 965; Rest.2d Torts, § 623A, comm. g, p. 341). Accordingly, with the one exception set forth below, none of the allegedly defamatory statements is fairly susceptible of a defamatory meaning, and Isuzu's defamation claims are properly dismissed with prejudice.

■ The only alleged statement that implies that plaintiff is not interested in 'fixing' the Trooper or protecting its customers is set forth at ¶ 65(f): " 'If Isuzu's leaders had accepted any of our five invitations to come to our test facility and review our findings in-depth, they would have seen how far off base [Isuzu's consultant]'s conclusions were' said Dr. Pittle. 'Perhaps then they would have directed more effort to protecting their customers than at shielding their public image.' " This statement is fairly susceptible of a defamatory meaning and appears to be based on a provably-false fact concerning Isuzu's state of mind (namely that Isuzu

cares more about public image than consumer safety). Accordingly, all defamation claims are dismissed with prejudice with the exception of the Sixth Claim for Relief; to the extent that claim relies on the allegations set forth in ¶ 65(f), the manufacturer plaintiff is granted leave to amend to state a claim for defamation.

### d. Continuing Course of Conduct

Defendant moves to dismiss as redundant plaintiff's First claim for Defamation from Continuing Course of Conduct and Tenth claim for Product Disparagement from Continuing Course of Conduct. In light of the Court's ruling on defamatory meaning, no "continuing course of conduct" is at issue with respect to defamation.

Plaintiff relies on the law of Ohio to support its contention that claims based on a continuing course of defamation or disparagement are viable. *See Katz v. Enzer*, 29 Ohio App.3d 118, 120, 504 N.E.2d 427 (1985). In addition to the fact that neither New York nor California appears to have adopted the law of Ohio in this respect, the court in *Katz* merely held that a defendant's subsequent words or acts tending to show malice are admissible to prove defamation so long as the subsequent statements can be "linked reasonably to the defamatory statements at issue as part of a continuing course of conduct." *Id.* at 121, 504 N.E.2d 427. In other words, under Ohio law, statements that, taken alone, might not be defamatory, will not be inadmissible if they are sufficiently linked to the allegedly defamatory statements. Even if the Court were to apply, *Katz*, that case does not stand for the proposition that a plaintiff may state a separate claim for continuing course of defamation or disparagement. Accordingly, the First and Tenth Claims for Relief are dismissed with prejudice.

### 4. Product Disparagement

As the Court explained in addressing the choice of law question raised by defendant, under California law, "a cause of action for damages for trade libel requires pleading and proof of special damages in the form of pecuniary loss." *Leonardini*, 216 Cal.App.3d at

572, 264 Cal.Rptr. 883. Under federal pleading requirements, "[w]hen items of special damages are claimed, they shall be specifically stated." Fed.R.Civ.P. 9(g). Thus, while the requirement that plaintiff plead special damages arises from state law governing a claim for product disparagement, the requirement that special damages be specifically pleaded stems from Fed.R.Civ.P. 9(g).

In a diversity case, the requirement that special damages be pleaded specifically is a matter of federal law. *See Brown & Williamson Tobacco Corp. v. Jacobson,* 713 F.2d 262, 269–70 (7th Cir.1983) (citing Note, The Definition and Pleading of Special Damages Under the Federal Rules of Civil Procedure, 55 Va.L.Rev. 542, 553–58 (1969), but disagreeing with author's suggestion that Fed.R.Civ.P. 9(g) language should give way to general requirement of notice pleading). Like the *Jacobson* court, this Court does not consider itself authorized to rewrite Fed. R.Civ.P. 9(g). *Id.* (requiring district court to allow cigarette company claiming defamation to amend complaint to state special damages specifically). Accordingly, plaintiff must specifically plead special damages in accordance with Fed.R.Civ.P. 9(g) in order to state a claim for product disparagement under California law.

Here, plaintiff Isuzu Motors has alleged that it has suffered and continues to suffer special damages from the loss of revenue from wholesale and retail sales of Isuzu Troopers. Complaint, ¶¶ 143, 209. In light of the apparent absence of guidance on the requirements of Rule 9(g) in our own Circuit, the Court looks to the decisions of the Seventh, Eighth and D.C. Circuits to determine the requirements of Rule 9(g).

A bare allegation of the amount of pecuniary loss alleged is insufficient, and plaintiff is not required to allege a specific dollar amount. *See Action Repair, Inc. v. American Broadcasting Companies, Inc.,* 776 F.2d 143, 149–50 (7th Cir.1985) Nonetheless,

> [i]f the plaintiff desired to predicate its right to recover damages upon general loss of custom, it should have alleged facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, [and] facts showing that such loss in sales were the natural and probable result of such publication[.]

*Fowler v. Curtis Pub. Co.,* 182 F.2d 377, 379 (D.C.Cir.1950) (quoting *Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories,* 17 F.2d 255, 261 (8th Cir.1926) (pre-dating adoption of Federal Rule 9(g) in 1937)); *see also Bose Corp. v. Consumers Union of United States, Inc.,* 57 F.R.D. 528, 530 (D.Mass.1973) (following *Erick Bowman Remedy* and holding allegation of amount of special damages insufficient). Under the foregoing authority, plaintiff's allegations to not satisfy Fed. R.Civ.P. 9(g). Several district court decisions interpreting Rule 9(g) also support the conclusion that plaintiff's allegations are not sufficiently specific. *See American Needle & Novelty, Inc. v. Drew Pearson Marketing, Inc.,* 820 F.Supp. 1072, 1076 (N.D.Ill.1993) (mere allegation that plaintiff suffered injury as natural result of alleged defamation insufficient to state special damages with adequate specificity); *Jacobson,* 713 F.2d at 269–70 (same, distinguishing cases in which plaintiff listed gross sales before and after alleged defamation or plaintiff alleged specific expenditure of money in response to alleged defamation).

Accordingly, defendant's motion to dismiss plaintiff's product disparagement claims is granted. Plaintiff is granted leave to amend the Eleventh through Twenty-second claims to plead special damages specifically.

Defendant's "additional reasons" for seeking dismissal of plaintiff's product disparagement claims are not presented with sufficient clarity to allow the Court to resolve whether plaintiff has failed to state a claim with respect to any of the individual product disparagement claims. In general, defendant's allegedly disparaging statements generally appear to be of and concerning plaintiff's product and to be either assertions of fact or assertions based on provably-false facts.

## 5. California Business & Professions Code § 17200

Plaintiff Isuzu Motors, Ltd.'s allegations are sufficient to state a claim under California Business & Professions Code

§ 17200. Section 17200 provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice[.]" Plaintiff is correct that § 17200 is interpreted broadly and allows lawsuits based on the public's right to protection from fraud, deceit and other unlawful conduct, as well as actions aimed at anticompetitive business practices. *See Hewlett v. Squaw Valley Ski Corp.*, 54 Cal.App.4th 499, 519, 63 Cal. Rptr.2d 118 (3d Dist.1997) (citing *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 209–10, 197 Cal. Rptr. 783, 673 P.2d 660 (1983)). In the oft-quoted definition: "[a]n unlawful business activity includes anything that can properly be called a business practice and that at the same time is forbidden by law." *Id.* (citations and internal quotation marks omitted).

■ Put simply, although § 17200 is designed to protect consumers from fraud and deceit by allowing any member of the public to sue on his or her own behalf, *see Committee on Children's Television*, 35 Cal.3d at 209, 197 Cal.Rptr. 783, 673 P.2d 660, the statute only applies to activities that "can properly be called a business practice." *Hewlett*, 54 Cal.App.4th at 519, 63 Cal.Rptr.2d 118. At the hearing on defendant's motion, the Court expressed doubt that the allegedly fraudulent publications underlying plaintiff's § 17200 claim constitute "business acts or practices." Nonetheless, "[w]hether any particular conduct is a business practice within the meaning of section 17200 is a question of fact dependant on the circumstances of each case." *People v. E.W.A.P., Inc.*, 106 Cal.App.3d 315, 322, 165 Cal.Rptr. 73 (2d Dist.1980) (holding allegations of commercial distribution of obscene material sufficient to state a claim under § 17200 and refusing, at pleading stage, to resolve scope of appropriate injunctive relief). Plaintiff sufficiently alleges that defendant's publication of defamatory and disparaging statements about the Trooper with intent to deceive the public constitutes a business practice under § 17200. *See* Complaint, ¶ 197.

Defendant argues that because interpretation of California's consumer protection statutes is guided by federal court interpretation of similar federal statutes, *see O'Connor v. Superior Court*, 177 Cal.App.3d 1013, 1017, 223 Cal.Rptr. 357 (5th Dist.1986), and because § 1125(a)(1)(B) of the Lanham Act requires misrepresentations to consist of commercial advertising or promotion to be actionable, *see, e.g., Oxycal Laboratories, Inc. v. Jeffers*, 909 F.Supp. 719 (S.D.Cal. 1995), Cal.Bus. & Prof.Code § 17200, et seq. is similarly limited. While this argument has some persuasive value, § 17200, unlike the Lanham Act, simply does not contain the "commercial advertising or promotion" limitation on its face.

■ Finally, defendant contends plaintiff fails to state a claim for relief under § 17200 because the injunctive relief it seeks would violate the First Amendment prohibition on prior restraints. Under California law, "all causes of action having as their gravamen the alleged injurious falsehood of a statement must satisfy the requirements of the First Amendment." *Leonardini*, 216 Cal.App.3d at 576, 264 Cal.Rptr. 883 (internal marks omitted) (quoting, *Blatty*, 42 Cal.3d at 1045, 232 Cal.Rptr. 542, 728 P.2d 1177).[2] Consequently, injunctive relief is only available under § 17200 where the injunction sought is in keeping with First Amendment jurisprudence.

■ Prior restraints on expression are presumptively unconstitutional. *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419–20, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971). "The special vice of a prior restraint is that communication will be suppressed, either directly or by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376, 390, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973). Consequently, where injunctive relief will not "endanger arguably

---

2. In, *Leonardini*, the court held that "statements made in the context of a public debate before a governmental agency on a matter of public health simply cannot be enjoined no matter what tortious label is pasted upon them." *Id.* at 579,

264 Cal.Rptr. 883 (holding defendant in malicious prosecution action lacked probable cause to seek injunctive relief to prevent dissemination of report on safety of plastic pipe).

protected speech" or require the court to speculate about the effect of the publication, there is no prior restraint within the meaning of Supreme Court jurisprudence. *See id.*

■ Here, plaintiff seeks "to enjoin Defendants from further conduct in violation of the California Business & Professions Code, including but not limited to an injunction preventing Defendants from disseminating or publishing further false, defamatory or disparaging information about Isuzu or the Trooper." Complaint, ¶ 201.[3] Such an injunction would necessarily precede an adequate determination that a particular statement by defendant was false, defamatory or disparaging. Accordingly, plaintiff's claim for relief under § 17200 is dismissed with prejudice to the extent it seeks relief beyond enjoining defendant from making specific statements determined to be unprotected by the First Amendment regarding Isuzu or the 1995 or 1996 Trooper.[4] Plaintiff shall have leave to amend the Twenty-third claim for relief in keeping with the foregoing analysis. *See Kramer v. Thompson,* 947 F.2d 666, 676 (3d Cir.1991) ("[O]nce a jury has determined that a certain statement is libelous, it is not a prior restraint for the court to enjoin the defendant from repeating *that* statement." (emphasis added)).[5]

### 6. Intentional Interference with Business Relations

■ To state a claim for intentional interference with prospective economic advantage, a plaintiff must plead: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2)

the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *LiMandri v. Judkins,* 52 Cal.App.4th 326, 339, 60 Cal.Rptr.2d 539 (4th Dist.1997). "[A] plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful 'by some measure beyond the fact of the interference itself.'" *Della Penna v. Toyota Motor Sales, U.S.A.,* 11 Cal.4th 376, 393, 45 Cal.Rptr.2d 436, 902 P.2d 740 (1995).

■ Here, plaintiff Isuzu Motors, Ltd. simply has not alleged such interference, particularly in light of the fact that it appears from the allegations that the manufacturer deals exclusively with the importer, the importer deals exclusively with the distributor, and the distributor deals with dealers and does not deal directly with consumers. Accordingly, the Twenty-fourth claim for relief is dismissed without prejudice. Plaintiff may amend the claim if possible, keeping in mind the strictures of Fed.R.Civ.P. 11.

### 7. Declaratory Relief

■ Under the Declaratory Judgment Act, 28 U.S.C. § 2201, federal district courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Plaintiff's claim for declaratory relief does not seek a declaration of rights and other legal relations. Instead,

---

3. Plaintiff's suggestion to the contrary in its opposition brief is unsupported by its citation to the Complaint.. Opp. at 31.

4. As the California Supreme Court explained in a case involving the proper scope of injunctive relief under the First Amendment:

 We emphasize that the proceedings now before us remain at the pleading state. Having determined that plaintiffs' complaint is sufficient to state a cause of action ... we consider it inappropriate to describe in detail the precise dimensions of the injunctive and other relief which might be suitable.... It is enough that the parties and the trial court recognize that substantial constitutional issues are presented in this litigation, and that care must be exer-

cised to assure that defendant's constitutional rights are not infringed. More than this is not required.

*E.W.A.P.,* 106 Cal.App.3d at 324, 165 Cal.Rptr. 73 (quoting *People ex rel. Busch v. Projection Room Theater,* 17 Cal.3d 42, 59–60, 130 Cal.Rptr. 328, 550 P.2d 600 (1976)).

5. Defendant's remaining challenges to plaintiff's § 17200 claim, including the. contentions that plaintiff has an adequate remedy at law, that the statements are protected because ·they were made in the context of an ongoing public debate before a governmental agency, and that there is no basis for restitution or disgorgment, are better addressed on a motion for summary adjudication.

plaintiff requests that the Court use the power granted by the Declaratory Judgment Act to resolve a scientific dispute regarding the safety of the Isuzu Trooper. *See Leonardini,* 216 Cal.App.3d at 580, 264 Cal.Rptr. 883 (in malicious prosecution action, finding defendant had improperly sought declaratory relief in federal court to resolve scientific dispute that did not concern legal rights or relations of the parties Declaratory relief is not available in federal court for this purpose, and defendant's motion to dismiss plaintiff's Twenty-fifth claim for relief is granted with prejudice).

## IV.
### Conclusion

For the foregoing reasons, defendant's motion is **GRANTED IN PART AND DENIED IN PART.**

All claims by Isuzu Motors America, Inc. and American Isuzu Motors, Inc. are dismissed with prejudice because none of the alleged statements are of and concerning them.

All defamation claims by Isuzu Motors Limited are dismissed with prejudice, except the claim based on the alleged statement set forth at ¶ 65(f) of the Complaint. Plaintiff is granted leave to amend to state a defamation claim based on the statement set forth in ¶ 65(f).

All of Isuzu Motors Limited's product disparagement claims are dismissed without prejudice because they fail to allege special damages with the specificity required by Fed.R.Civ.P. 9(g). Plaintiff is granted leave to amend to allege special damages in keeping with this order.

Plaintiff Isuzu Motors Limited's claim under § 17200 of the California Business & Professions Code is dismissed with prejudice to the extent plaintiff seeks injunctive relief broader than an injunction preventing defendant from making specific statements determined to be unprotected by the First Amendment regarding Isuzu or the 1995 or 1996 Trooper. Plaintiff is granted leave to amend the 17200 claim.

Plaintiff Isuzu Motors Limited's claim for Intentional Interference with Business Relations is dismissed without prejudice. Plain-

tiff is granted leave to amend, keeping in mind the strictures of Fed.R.Civ.P. 11.

Plaintiff Isuzu Motors Limited's claim for Declaratory Relief is dismissed with prejudice.

**IT IS SO ORDERED.**