**EMERITO ESTRADA RIVERA–ISUZU DE P.R., INC., Plaintiff, Appellant,**

v.

**CONSUMERS UNION OF UNITED STATES, INC., Defendant, Appellee.**

**No. 99–2333.**

United States Court of Appeals, First Circuit.

Argued Sept. 6, 2000.

Decided Nov. 28, 2000.

---

Lisa I. Fair with whom Michael J. Rovell, Law Offices of Michael J. Rovell, Charles A. Cuprill–Hernandez and Law Offices of Charles A. Cuprill were on brief for appellant.

Michael N. Pollet with whom Pollet & Felleman, Ramon E. Bauza–Higuera and Bauza & Davila were on brief for appellee.

Before BOUDIN, Circuit Judge, BOWNES, Senior Circuit Judge, and LYNCH, Circuit Judge.

BOUDIN, Circuit Judge.

Consumers Union of United States, Inc. ("Consumers Union") is a not-for-profit corporation that regularly conducts performance testing of consumer products. At a press conference on August 20, 1996, Consumers Union announced the results of its tests of the 1995–1996 Isuzu Trooper, a sport utility vehicle built by Isuzu Motors Ltd. ("Isuzu").[1] Consumers Union called the Trooper "Not Acceptable" because of its "tendency to roll over in certain situations," and recommended that Isuzu halt sales of the Trooper and recall vehicles already sold, and that owners of the Trooper "drive it only when necessary." Consumers Union also criticized Isuzu's limited response to the test results, sug-

---

**1.** Consumers Union issued a written press release, made available a videotape of the tests that were conducted, offered a recorded telephone message that could be reviewed by the public, and distributed an article via facsimile and internet services.

gesting that Isuzu was putting consumers at risk in the name of profits.

Following the August 1996 announcements, Consumers Union published a full-length article in its magazine, *Consumer Reports,* which also described its test results. The article offered further warnings on the Trooper, urging consumers not to purchase Troopers and recommending that the National Highway Transportation Safety Administration ("NHTSA") begin a defect investigation. Over the next year, despite protests from Isuzu and criticisms from NHTSA, Consumers Union continued to warn of the Trooper's dangers. Consumers Union's announcements and articles referred only to the Trooper and its manufacturer, Isuzu; none mentioned Emerito Estrada Rivera–Isuzu de P.R., Inc. ("Emerito"), the exclusive distributor of the Trooper in Puerto Rico and at least two of the U.S. Virgin Islands.

Nonetheless, on December 31, 1997, Emerito filed suit against Consumers Union in the federal district court in Puerto Rico, claiming that it had been injured by Consumers Union's disparagement of Isuzu and the Isuzu Trooper. Emerito sought damages for lost sales on three separate theories: defamation (count I); product disparagement (count II); and intentional interference with Emerito's business relations (count III). In its final count, Emerito sought a declaratory judgment that Consumers Union's statements about the Trooper were false (count IV).

Consumers Union moved to dismiss, and converting the motion to one for summary judgment, *see Garita Hotel Ltd. Partnership v. Ponce Fed. Bank,* 958 F.2d 15, 18–19 (1st Cir.1992), the district court granted summary judgment against Emerito. As to all of the damages claims, the district court held that the First Amendment barred recovery because each claim turned on injurious falsehood but, in the district court's view, none of the alleged falsehoods were "of or concerning" the plaintiff Emerito. The district court added that the defamation claim failed under Puerto Rico law for the same reason, and that the intentional interference claim failed because the complaint did not identify any "specific existing relationships" interfered with by the Consumers Union statements.

On appeal by Emerito from the grant of summary judgment, our review is *de novo. Landrau–Romero v. Banco Popular De Puerto Rico,* 212 F.3d 607, 611 (1st Cir. 2000). At the forefront is the district court's constitutional ruling. Starting with *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court has prescribed, as First Amendment requirements, numerous substantive and procedural limitations on defamation and certain related torts. Here, the district court thought that one such prescribed constitutional rule is that defamation be "of and concerning" the plaintiff. We are less certain.

Traditionally, the "of and concerning" requirement has been shorthand for a common law rule that a plaintiff in a defamation case must show that the statement referred to the plaintiff, either explicitly or by implication. *E.g., Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). Conceivably defamation of one person could cause harm to another person who was not defamed; for example, a wife might suffer emotional distress because her husband was libeled. But at common law only the defamed person could sue. Keeton, Dobbs, Keeton & Owen, *Prosser and Keeton on Torts* § 111, at 779–80, 783–85 (5th ed.1984).[2]

To what extent this "of and concerning" requirement is also imposed by

---

2. In order to recover, a plaintiff did not have to be specifically named in the defamatory statement so long as a reader by fair implication would understand the statement to be directed at the plaintiff; but absent special circumstances, a general condemnation of a large group or class would not normally be taken to refer to an individual within the class. *Id.* § 111, at 783–84. *E.g., Michigan United Conservation Clubs v. CBS News,* 485 F.Supp. 893, 900 (W.D.Mich.1980), *aff'd,* 665 F.2d 110 (6th Cir.1981).

the First Amendment is a different question. The most familiar elements in the *New York Times* line of authority are now well-settled. Whatever state law might otherwise dictate, a public official or "general purpose" public figure cannot recover for defamation (or certain related torts) unless the plaintiff shows a falsehood published with "actual malice" by the defendant (meaning a knowing falsehood or one made recklessly). The burden of proof, also prescribed by the Supreme Court, is on the plaintiff and the showing must be made by clear and convincing evidence. A reviewing court does not accord ordinary deference to the fact finder but reviews the evidence in a more searching manner. Somewhat less demanding regimes apply where the plaintiff is a "limited purpose" public figure or not a public figure at all.[3]

Just how the "of and concerning" requirement enters into constitutional history is a curious story. In *New York Times*, a jury awarded a large libel judgment against the newspaper and in favor of a county commissioner for a civil rights advertisement carried by the paper. 376 U.S. at 256, 84 S.Ct. 710. The advertisement generally criticized the actions of police in Montgomery, Alabama. *Id.* at 257–58, 84 S.Ct. 710. The Court's main basis for setting aside the libel award was that it failed to conform to the Court's newly announced "actual malice" requirement for defamation actions brought by public officials. *Id.* at 285–88, 84 S.Ct. 710. But the Court then went on to describe a second respect in which "the evi-

dence was constitutionally defective": it was, said the Court, "incapable of supporting the jury's finding that the allegedly libelous statements were made 'of and concerning' [the plaintiff]." *Id.* at 288, 84 S.Ct. 710.

Under Alabama law, the "of and concerning" requirement already existed, and the Supreme Court may have meant only that the evidence to show that the advertisement was "of and concerning" the plaintiff did not meet the demanding evidentiary requirement that the Court had just adopted for free speech cases. However, whether or not *New York Times* intended to adopt "of and concerning" as a constitutional rule, *some* such requirement was thereafter made "constitutional" in *Rosenblatt v. Baer*, 383 U.S. 75, 82–83, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). Precisely what *Baer* meant is a more difficult question.

In *Baer* the Court was concerned with a newspaper column that criticized generally the management of a county recreation facility without mentioning the plaintiff official. In overturning the jury's damage award, the Court said that the jury instructions

permitted the jury to find liability merely on the basis of [the plaintiff's] relationship to the government agency, the operations of which were the subject of [the column's] discussion.... A theory that the column cast indiscriminate suspicion on the members of the group responsible for the conduct of this gov-

---

3. Under *New York Times*, public officials must show "actual malice" by clear and convincing evidence and the reviewing court must "make an independent examination of the whole record." 376 U.S. at 285. Important extensions are *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 162–72, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (*New York Times* requirements extend to public figures who are not public officials); *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 30–32, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971) (*New York Times* standards apply to a private individual involved in an event of public interest); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347, 351, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (*New York Times* standards apply to "limited purpose" public figures, and liability in private figure defamation suits requires fault); *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 514, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) (reviewing judges "must exercise independent judgment" when reviewing a determination of "actual malice"); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990) (nonactionability of "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation").

28

ernmental operation is tantamount to a demand for recovery *based on libel of government,* and therefore is constitutionally insufficient.

*Baer,* 383 U.S. at 82–83, 86 S.Ct. 669 (emphasis added). Similarly, *New York Times* had condemned the verdict as punishing "criticism of government" by "transmuting" such criticism, "however impersonal it may seem on its face, into personal criticism, and hence potential libel, of the officials of whom the government is composed." 376 U.S. at 292, 84 S.Ct. 710.

Perhaps *New York Times* and *Baer,* taken together, adopt in full the common law "of and concerning" requirement as a constitutional norm. Moreover, because there exists ample precedent for applying *New York Times* requirements to falsehood claims beyond defamation, a constitutional "of and concerning" rule could mean that any recovery for falsehood regardless of the label can be only by the person identified in the falsehood. *Cf. Hustler Magazine v. Falwell,* 485 U.S. 46, 56, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988) (extending *New York Times* standards to claims for intentional infliction of emotional distress); *Time, Inc. v. Hill,* 385 U.S. 374, 386–88, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) (same for claims regarding a right to privacy).

This is more or less what the district court thought, and its view is supported by a leading decision of the California Supreme Court, albeit over a dissent, *Blatty v. New York Times Co.,* 42 Cal.3d 1033, 232 Cal.Rptr. 542, 728 P.2d 1177, 1182–85 (1986) (en banc), *cert. denied,* 485 U.S. 934, 108 S.Ct. 1107, 99 L.Ed.2d 268 (1988), and by a leading treatise writer on defamation, albeit in a treatise taking a broad view of constitutional protections, Sack & Baron, *Libel, Slander, and Related Problems* §§ 11.1.4.3, 11.1.8 (2d ed.1994). The California Supreme Court view, in turn, has been followed by several federal district courts. *E.g., Isuzu Motors Ltd. v. Consumers Union of United States, Inc.,* 12 F.Supp.2d 1035, 1044–45 (C.D.Cal.1998);

*Auvil v. CBS "60 Minutes",* 800 F.Supp. 928, 933, 937 (E.D.Wash.1992).

However, there is reason to be cautious. The Supreme Court in *New York Times* and *Baer* was concerned with libel directed against government activities where the plaintiff was not named in the article or even indirectly distinguished from other officials. Here, by contrast, "libel of government" by "impersonal criticism" is certainly not a threat. Instead, knowing falsehoods (or so we must assume at the summary judgment stage) were directed at a named private target (Isuzu) but happen quite predictably to cause demonstrable harm (so we must again assume) to someone closely connected with the defamed person (Emerito). The problem of generalized criticism addressed in *Baer* is not present here; the question in this case is whether the law will permit recovery by a third party related to the person specifically criticized.

This does not mean that constitutional concerns are absent. Consumers Union's comments on the Trooper were directed to a matter of public concern; and the threat of repetitive suits by many Isuzu dealers never directly libeled by Consumers Union doubtless would deter such criticism. (Indeed, when Isuzu itself sued Consumers Union in *Isuzu Motors Ltd., supra,* it apparently lost on the merits although the jury verdict is not reported.) On the other hand, once a specific private party is the named subject of a defamatory statement and "actual malice" by the defendant is assumed to be provable by clear and convincing evidence, *see* note 2 above, the case for extra constitutional protection by prohibiting recovery by injured third parties is weaker. How the Supreme Court will ultimately resolve these competing concerns is not obvious.

■ We thus find it advisable to decide this appeal on local law grounds, even though Puerto Rico precedents offer uncertainty of their own, and start with the first count of the complaint, charging Consumers Union with defamation. While

Puerto Rico is a civil law jurisdiction and is not bound by common law, the Puerto Rico Supreme Court has declared that in a *defamation* action under the Civil Code, 32 P.R. Laws Ann. §§ 3141–49 (1990), a plaintiff must show "not only ... that certain published information was libelous but must also identify himself as the person libeled." *Rodriguez v. El Vocero de Puerto Rico, Inc.*, 135 D.P.R. 122, 129, 1994 WL 909249 (P.R.), *cert. denied*, 512 U.S. 1237, 114 S.Ct. 2744, 129 L.Ed.2d 863 (1994).

Nevertheless, *Rodriguez upheld* a claim by a wife for emotional and other injury based on a defamatory statement directed against her police-officer husband. The court did so by invoking a general tort provision in the Civil Code which states: "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 P.R. Laws Ann. § 5141 (1991). The court emphasized the sweep of this section as encompassing any damage caused by fault, and it continued:

> If the subject of the defamatory information himself is entitled to redress— for defamation or damage and mental anguish—caused by the published information, his wife and children, or third persons who suffered damage and mental anguish, should have a cause of action for damages.

> We cannot escape the sociological and psychological reality that the wife, children, or parents of a defamed person, *given their relationship with the person so defamed*, could also be affected by the libelous publication.

*Id.* at 134–35 (internal citation omitted).

We are unwilling to treat *Rodriguez* as an open-ended endorsement of third-party libel actions outside the family context.[4] In a commercial context, an almost unlim-

ited number of plaintiffs could potentially be injured by defamation of a manufacturer and, on Emerito's reading of Puerto Rico law, bring independent suits and recover. If damage to Emerito's sales was foreseeable, so was damage to all of its employees, to the dealers to whom it sells, to their employees, to companies that supply other goods or services to Emerito or to its dealers, to garages that specialize in repair of foreign vehicles, *and* to all current owners of similar Isuzu vehicles whose resale value may be depressed by unfavorable stories.

As a matter of policy, the law is slow to impose liability in favor of persons who were not directly injured by a wrong but suffer only derivatively or secondarily. Sometimes this is done by doctrines limiting "duty" or "right" (*e.g.*, a stockholder may not sue for injury "to the corporation," *In re Dein Host, Inc.*, 835 F.2d 402, 405–06 (1st Cir.1987)), and sometimes by adjustment of the concept of proximate cause. *Prosser and Keeton on Torts, supra*, § 43 (citing *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928)). Exceptions exist—wrongful death statutes and loss of consortium claims are good examples—but what is not easy to tolerate, either for society or individuals, is liability that extends to remote consequences without limits.

█ Despite some general language in *Rodriguez* helpful to Emerito's position, extending that decision beyond close family members is enough of a new trail, and one into hazardous territory, that it should be blazed (if at all) by the Commonwealth courts. *Kassel v. Gannett Co., Inc.*, 875 F.2d 935, 949–50 (1st Cir.1989). As for Emerito's suggestion that we certify the issue to the Puerto Rico Supreme Court, it

---

4. Cases since *Rodriguez* have recognized its authority, but none of those cited to us upholds a claim by someone other than a family member or other person closely tied to the direct victim by affection or love. *Bonafont Solis v. American Eagle*, 97 J.T.S. 86, 1997 WL 423416 (P.R.1997); *Maldonado Rodriguez v. Banco Central Corp.*, 138 D.P.R. 268, 274–75, 1995 WL 905733 (P.R.1995); *Santini Rivera v. Serv Air, Inc.*, 137 D.P.R. 1, 10–11, 1994 WL 909527 (P.R.1994); *Garib Bazain v. Clavell*, 135 D.P.R. 475, 491 n. 7, 1994 WL 909579 (P.R.1994).

comes too late, no such request having been made in the district court. *Clarke v. Kentucky Fried Chicken of Cal., Inc.,* 57 F.3d 21, 24 n. 5 (1st Cir.1995). We affirm the district court's judgment against Emerito on count I.[5]

Count II of the complaint reasserts the same facts but frames the complaint as one of product disparagement directed at the Trooper. Puerto Rico, like many other jurisdictions, does recognize such a tort. *Cooperativa De Seguros Multiples De Puerto Rico v. San Juan,* 294 F.Supp. 627, 630 (D.P.R.1968); *see generally Prosser and Keeton on Torts, supra,* § 128. In some courts, this is treated as akin to defamation and often called trade libel; in others, it is deemed closer to commercial wrongs like interference with advantageous or contractual relations. *Id.* § 128. And the rules vary among jurisdictions.

In all events, on this appeal Emerito has made no effort to distinguish its count II disparagement claim from its count I defamation claim. Its brief refers tersely to defamation of Isuzu and the Trooper, but there is no separate discussion of the elements of disparagement nor any attempt to show that the disparagement claim might survive even if the defamation claim perished. In this, Emerito has followed the lead of the district court which treated counts I and II as a single entity. We are not sure that this is correct, but Puerto Rico law on product disparagement is scanty and the obligation to show error is upon the appellant. Thus, on this appeal, count II falls with count I.

■ Count III is a different matter. Under this head, Emerito charged intentional interference with business relations, claiming (generally) that the statements by Consumers Union hampered Emerito's "existing or prospective beneficial economic relationships" with purchasers. In dismissing this claim, the district court relied not only on the First Amendment but, independently, on Emerito's failure to identify any specific relationships that were injured or threatened. Not all jurisdictions adopt this requirement, *L & W/Lindco Prods., Inc. v. Pure Asphalt Co.,* 979 F.Supp. 632, 639–40 (N.D.Ill.1997), but the district court cited a number of cases, including two from Puerto Rico courts, calling for such specificity.[6]

■ Emerito did suggest in opposing the motion to dismiss that it wished to amend if specifics were required. The difficulty is that, despite its awareness that Consumers Union had called for dismissal on this ground, Emerito never amended its complaint as of right—as it could have done any time before judgment since no answer had been filed, *Dartmouth Review v. Dartmouth Coll.,* 889 F.2d 13, 22 (1st Cir.1989)—nor did it formally ask the district court after judgment to permit such an amendment. *See* Fed.R.Civ.P. 59, 60(b); *Glenn v. First Nat'l Bank,* 868 F.2d 368, 370 (10th Cir.1989).

Under these circumstances, we cannot say that the district court committed error, let alone plain error, by failing to *invite* Emerito to replead. Given Puerto Rico case law, the obligation to be specific in the complaint was reasonably apparent and it was underscored by Consumers Union's motion which sought dismissal on that very ground. It is too late to press a request to amend for the first time on appeal when either self-help or a post-

---

5. Count I also claimed that the statements defamed Emerito directly, albeit without mentioning its name, because they implied (the complaint alleged) that Emerito knowingly distributed an unsafe product. This is plainly something of a stretch, and Emerito does not press this theory on appeal.

6. *PPX Enters., Inc. v. Audiofidelity Enters., Inc.,* 818 F.2d 266, 269–70 (2d Cir.1987); *Kramer v. Pollock–Krasner Found.,* 890 F.Supp. 250, 258 (S.D.N.Y.1995); *Dolphin Int'l of P.R., Inc. v. Ryder Truck Lines, Inc.,* 127 D.P.R. 869, 879 (P.R.1991); *General Office Prods. Corp. v. A.M. Capen's Sons, Inc.,* 115 D.P.R. 553, 558–59 (P.R.1984).

judgment motion in the district court would almost surely have sufficed.

*Affirmed.*