La Sociedad de Gananciales formada por Carlos O. Rodrí-
guez, etc., demandantes y recurridos, v. El Vocero de
Puerto Rico, Inc. y otros, demandados y peticionarios.

*Número:* CE-91-414 *Resuelto:* 7 de febrero de 1994

*Juan R. Marchand Quintero, José E. Colón Rodríguez y Francisco Ortiz Santini*, de *Rivera Cestero & Marchand Quintero*, abogados de los demandados y peticionarios; *José Ángel Cangiano*, abogado de los demandantes y recurridos.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

¿Pueden reclamar resarcimiento quienes sufran daños por la difamación hecha contra una persona relacionada a ellos, o dicha causa de acción está vedada por las garantías

constitucionales a favor de la libertad de expresión y de prensa? Esta interrogante, nunca antes confrontada por este Tribunal, es la planteada en el recurso de epígrafe. Conforme a los fundamentos que exponemos a continuación, resolvemos que la doctrina que limita el derecho a instar acciones por difamación a que la publicación contenga una referencia específica sobre el demandante y relativa a éste (*of and concerning the plaintiff*), no impide el ejercicio de la causa de acción de terceros por los daños sufridos por ellos a causa de dicha difamación *si en la publicación se identifica* personalmente a quien por cuya difamación éstos reclaman daños y conforme a lo aquí expuesto. Veamos.

I

Los hechos pertinentes a la controversia que nos ocupa son los siguientes.

Se trata de una acción instada contra *El Vocero de Puerto Rico, Inc.* (*El Vocero*) a causa de la publicación de una información alegadamente difamatoria contra Carlos O. Rodríguez Rivera, quien a la fecha se desempeñaba como Director del Cuerpo de Investigaciones Criminales de la Policía de Puerto Rico, Región de Ponce. El señor Rodríguez Rivera *y su esposa*, Doña Emérita Mercado, reclamaron el resarcimiento por los alegados daños que les causó la publicación hecha por *El Vocero*. La demandada solicitó la desestimación de la causa de acción *de la esposa del implicado en la noticia*, puesto que a ella no se le mencionó ni se le identificó de forma alguna.([1]) El tribunal de instancia

---

([1]) Se trata de dos (2) noticias publicadas por *El Vocero de Puerto Rico, Inc.* (*El Vocero*), una en su edición de sábado 14 de enero de 1989 y otra el sábado 21 de enero de 1989. La primera apareció publicada en la pág. 39 bajo el titular: "Sobre traslado agentes desautorizan jefe CIC Ponce." La segunda apareció publicada bajo el titular: "Piden renuncia jefe CIC." No está en controversia que se trata aquí de una reclamación de daños producto de la publicación de alegadas expresiones difamatorias contra la persona de un tercero, y *que en la publicación no se menciona directamente a la demandante ni versaba sobre su persona*. No obstante, en las noticias referidas

denegó la solicitud de desestimación y resolvió que la señora Mercado tenía una causa de acción *por daños y perjuicios contingente* a la causa de acción por *difamación* de su marido. Acudió ante nos la demandante mediando el mismo señalamiento planteado en su solicitud de desestimación. Expedimos el auto correspondiente.

## II

█ Al evaluar la reclamación de la demandante debemos reconocer de entrada que la causa de acción por la cual se presentó la demanda es una general *en daños y perjuicios*, y no una exclusivamente por difamación. Esto así, debido a que no toda causa de acción civil en la que se reclaman daños como consecuencia de la publicación de información sobre una persona, constituye una causa de acción por libelo o difamación.[2] Véanse: *Colón v. Romero Barceló*, 112 D.P.R. 573 (1982); *Torres Silva v. El Mundo, Inc.*, 106 D.P.R. 415 (1977); *Romany v. El Mundo, Inc.*, 89 D.P.R. 604 (1963).

El objeto de derecho tutelado en la acción por difamación y por cuya afección se reclama resarcimiento es *la reputación personal* del sujeto injuriado públicamente. Véase B.W. Sanford, *Libel and Privacy*, 2da ed., Nueva York, Ed. Prentice Hall Law & Business, Sup. 1993 págs. 95–100.[3]

█ Se trata del derecho que le reconoce el ordenamiento legal a las personas naturales o jurídicas a defender su nombre ante los ojos de los demás, el cual consiste

---

*sí existe una referencia específica al esposo de la recurrida.*

[2] En términos generales, se conoce como "libelo" la difamación realizada por medios escritos. Véase R.A. Smolla, *Law of Defamation*, Nueva York, Ed. Clark Boardman Co., 1991.

[3] Sanford explica el desarrollo histórico del derecho en torno a las acciones por difamación y señala cómo la defensa de la reputación y el buen nombre se acentúa y se torna en una necesidad y un objeto a ser tutelado jurídicamente con la transformación de los antiguos regímenes feudales de naturaleza agraria en sociedades urbanas mercantilistas.

en el interés de: (1) proteger las relaciones que sostiene con terceros; (2) proteger la probabilidad de relaciones futuras con terceros; (3) proteger su imagen pública en general, y (4) evitar que se le cree una imagen pública negativa si careciere de reconocimiento público en el presente. D.A. Anderson, *Reputation, Compensation, and Proof*, 25 Wm. & Mary L.Rev. 747, 764–766 (1984).

 A tales efectos, el objeto de la acción en daños por difamación es proveer una compensación *por el daño a la reputación y la pérdida del buen nombre* del injuriado y no brindar resarcimiento por la ocurrencia de otros tipos de daños, como lo podrían ser las angustias emocionales sufridas y la posible interferencia habida con la intimidad del libelado, entre otras.

> The orthodoxy has always been that the primary function of the law of defamation is to protect the relational interest in loss of reputation, rather than to compensate for the emotional disturbance caused by the defamation, which was left primarily to the law of privacy and infliction of emotional distress. (Escolios omitidos.) R.A. Smolla, *Law of Defamation*, Nueva york, Ed. Clark Boardman Co., 1991, Sec. 1.06[3]. Véanse: E.C. Thomas, *The Law of Libel, Slander & Related Action*, 3ra ed., Ed. Oceana, 1973, págs. 70–75; R.D. Sack, *Libel, Slander and Related Problems*, Nueva York, Ed. Practising Law Institute, 1980, págs. 385–386.

 Conforme reconocimos en *Torres Silva v. El Mundo, Inc.*, supra, págs. 423–424, "[l]a acción de libelo es una acción de resarcimiento de daños *dirigida a vindicar el interés social en la reputación de la persona*, razón por la cual encaja perfectamente en la norma de responsabilidad estatuida en el Art. 1802": (Énfasis suplido.) Véase *Porto y Siurano v. Bentley P.R., Inc.*, 132 D.P.R. 331 (1992). Tales acciones por difamación pueden estar contenidas o inmersas dentro de una acción general de daños, pero no abarcan la totalidad de los remedios provistos por éstas. A tales efectos, la acción en daños al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, está relacionada, pero es

distinta por ser más abarcadora. Mediante esta acción de daños un demandante, en vez de pedir una compensación *exclusivamente* por la lesión causada a la reputación del difamado y a sus relaciones en la comunidad, persigue obtener resarcimiento por otros daños resultantes, por ejemplo, los daños y angustias mentales y morales que las aseveraciones publicadas hayan producido. Véanse: *Torres Silva v. El Mundo, Inc.*, supra; *Colón v. Romero Barceló*, supra; *Méndez Arocho v. El Vocero de P.R.*, 130 D.P.R. 867 (1992).

Resulta fundamental reconocer tales diferencias a la hora de evaluar la aplicabilidad de doctrinas elaboradas en el derecho común cuando se adjudican reclamaciones por libelo a las acciones por daños y angustias mentales amparadas por el Art. 1802 de nuestro Código Civil, *supra*. La norma de derecho más ilustrada y justa puede convertirse en el mayor absurdo o arbitrariedad si se aplica sin pensar y de forma automática a situaciones jurídicas distintas de aquellas para las cuales fue elaborada, haciendo abstracción de los principios que encarna y de los intereses jurídicos que pretende tutelar. Con esto en mente, debemos examinar la aplicabilidad de la doctrina del *of and concerning the plaintiff* a la controversia en autos.

### III

■ *En el ámbito de las acciones por difamación* en el derecho común se ha elaborado la doctrina conocida como *of and concerning the plaintiff*, la cual requiere que en toda acción por *difamación* el demandante pruebe que las expresiones difamatorias *se refieren a su persona de modo particular.* El requisito de referencia específica o declaración "sobre el demandante y relativa al mismo" limita el derecho a demandar por falsedad injuriosa, ya que concede dicho derecho a aquellos que son objeto *directo* de críticas, y se lo niega a aquellos que meramente se quejan por ma-

nifestaciones no específicas que estiman que los perjudican. *Blatty v. New York Times Co.*, 728 P.2d 1177 (Cal. 1986).

Esta doctrina impide las reclamaciones por difamación vicaria (Sack, *op. cit.*, pág. 122) y las reclamaciones por difamaciones hechas contra grupos de personas cuando el demandante no pueda probar que él fue señalado de forma individual, es decir, que se hizo una referencia específica contra él o ella de forma particular y singularizada. Véanse: *Rosado v. Fluor International*, 81 D.P.R. 608, 616 (1959); Sack, *op. cit.*, pág. 116; P. Lewis, *Gatley on Libel and Slander*, 8va ed., Londres, Ed. Sweet & Maxwell, 1981, págs. 274–296; Smolla, *op. cit.*, Secs. 4.09–4.10[1]. Se trata, en primera instancia, de un requisito relativo a la identificación del difamado. Véase, además, *Rosado v. Fluor International*, supra.

Para prevalecer en una acción *por difamación*, el demandante no sólo debe probar que cierta información publicada era de contenido difamatorio, sino que debe poder hacer la identificación de sí mismo como la persona difamada. Ningún escrito puede considerarse libeloso a menos que se refleje sobre una persona en particular. " 'The true question always is: Was the individual or were the individuals bringing the action personally pointed to by the words complained of?' " Gatley, *op. cit.*, pág. 289. *Siendo una acción destinada a vindicar la reputación personal del injuriado*, lógicamente requiere que la identidad de éste surja diáfanamente de la publicación en cuestión.

Por su parte, el Tribunal Supremo de Estados Unidos ha reconocido que la doctrina, en cuanto a que la publicación sea sobre el demandante y relativa a éste, goza de una dimensión constitucional. En la renombrada decisión *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), el más alto Foro federal estimó que resultaba constitucionalmente defectuosa *la adjudicación de libelo* hecha por un Jurado a favor del Comisionado a cargo de la Policía del estado de

Alabama, cuando éste no aportó prueba de que las alegadas expresiones difamatorias alegadas, que aparecían en un anuncio publicado por el Times contra el cuerpo policíaco, versaban sobre su persona.

El Tribunal sostuvo que:

> *This proposition has disquieting implications for criticism of governmental conduct.* For good reason, "no court of last resort in this country has ever held, or even suggested, that prosecutions for libel on government have any place in the American system of jurisprudence." *City of Chicago v. Tribune Co.*, 307 Ill. 595, 601, 139 N.E. 86, 88 (1923). The present proposition would sidestep this obstacle *by transmuting criticism of government, however impersonal it may seem on its face, into personal criticism, and hence potential libel, of the officials of whom the government is composed. There is no legal alchemy by which a State may thus create the cause of action that would otherwise be denied for a publication which, as respondent himself said of the advertisement, "reflects not only on me but on the other Commissioners and the community."* Raising as it does the possibility that a good-faith critic of government will be penalized for his criticism, the proposition relied on by the Alabama courts strikes at the very center of the constitutionally protected area of free expression. We hold that such a proposition may not constitutionally be utilized to establish that an otherwise impersonal attack on governmental operations was a libel of an official responsible for those operations. (Énfasis suplido.) *New York Times Co. v. Sullivan*, supra, págs. 291–292.

Tal razonamiento fue, con posterioridad, reafirmado en *Rosenblatt v. Baer*, 383 U.S. 75, 81–82 (1966), cuando dicho Foro resolvió que *por imperativo de la Primera Enmienda* de la Constitución federal, un ataque impersonal a la gestión de gobierno no podía dar base a una *acción de libelo* por parte de aquellos encargados de administrar esa gestión en ausencia de prueba de que el ataque se enfocó específicamente sobre sus personas particulares.

 En tal sentido, la doctrina de *of and concerning the plaintiff* goza de rango constitucional en cuanto a impedir que un ataque o cuestionamiento *impersonal* a la

gestión gubernamental o sobre un asunto de interés público pueda dar base *a una acción de libelo* por parte de los funcionarios o figuras públicamente responsables por dicha gestión, pudiendo así desalentar o penalizar el ejercicio de la discusión y fiscalización pública sobre estos asuntos.

En estos casos, el requisito de referencia específica sirve para inmunizar un tipo de declaraciones que no deben desalentarse por ser importantes para mantener el vigor y la apertura del discurso público en una sociedad libre. Al igual que las declaraciones que expresan una opinión, las declaraciones que carecen de una referencia específica gozan de inmunidad bajo el manto de la Primera Enmienda en cuanto éstas sirven el interés fundamental de fomentar y garantizar el debate público y la crítica abierta, libre y robusta sobre la gestión gubernamental y otros asuntos de interés público. *Blatty v. New York Times*, supra; *Rosenblatt v. Baer*, supra.

> Es mejor para el bienestar ciudadano no conceder remedio para un perjuicio ocasional e indirecto causado a un individuo debido a alguna declaración que censure en términos generales su profesión, su partido, o su sector, que refrenar la libre discusión de temas políticos, morales o religiosos de gran importancia por miedo a propiciar amargos e interminables litigios. (Traducción nuestra.) *Blatty v. New York*, supra, pág. 1184.

En consecuencia, las garantías contenidas en la Primera Enmienda de la Constitución federal a favor de la libertad de expresión y de prensa prohíben que cualquier estado conceda un remedio o reconozca una causa de acción *por libelo* a un ciudadano por declaraciones impersonales hechas sobre asuntos de importancia pública, *en ausencia de una referencia difamatoria a su persona en su carácter personal*. Satisfecho este requisito de referencia específica, corresponderá al demandante probar su causa de acción por libelo conforme a las normas de responsabilidad cons-

titucionalmente aplicables según elaborados por el Tribunal Supremo federal y por esta Curia.([4])

## IV

■ A tales efectos, no tenemos duda respecto a que la doctrina de referencia específica en su vertiente constitucional *aplica igualmente a acciones de daños por angustias mentales derivadas de una publicación en la prensa.*

En *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988), el más alto Foro federal resolvió que la Primera Enmienda igualmente limita la autoridad de los estados para conceder un remedio por daños y angustias mentales en menoscabo del derecho a la libre expresión y a la libertad de prensa. Este Tribunal *rechazó* el argumento del recurrido en cuanto a que debía aplicarse un estándar de responsabilidad distinto, puesto que el Estado no perseguía prevenir un daño a la reputación de los ciudadanos, sino prevenir el severo daño emocional que sufren aquellas víctimas de una publicación ofensiva.

Señaló dicho Tribunal Supremo que de lo que se trata es de garantizar que el debate público y la libre discusión de ideas permanezcan libres de sanciones impuestas por el estado. Aclaró el Tribunal que esto no implica que cualquier expresión resulta inmune de ser penalizada mediante la concesión de daños, sino que tal imposición debe ajustarse a las normas constitucionales de responsabilidad

---

([4]) Véanse: *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964); *Garrison v. Louisiana*, 379 U.S. 64 (1964); *Rosenblatt v. Baer*, supra; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974); *Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967); *Associated Press v. Walker*, 393 S.W.2d 671 (Tex. App. 1965); *Dun & Bradstreet, Inc. v. Greenmoss Builders*, 472 U.S. 749 (1985); *Méndez Arocho v. El Vocero de P.R.*, 130 D.P.R. 867 (1992); *Villanueva v. Hernández Class*, 128 D.P.R. 618 (1991); *Maldonado y Negrón v. Marrero y Blanco*, 121 D.P.R. 705, 713–718 (1988); *Ocasio v. Alcalde Mun. de Maunabo*, 121 D.P.R. 37 (1988); *Soc. de Gananciales v. López*, 116 D.P.R. 112 (1985); *Oliveras v. Paniagua Diez*, 115 D.P.R. 257 (1984); *Clavell v. El Vocero de P.R.*, 115 D.P.R. 685 (1984); *García Cruz v. El Mundo, Inc.*, 108 D.P.R. 174 (1978); *Cortés Portalatín v. Hau Colón*, 103 D.P.R. 734 (1975); *Zequeira Blanco v. El Mundo, Inc.*, 106 D.P.R. 432 (1977); *Alberio Quiñones v. E.L.A.*, 90 D.P.R. 812 (1964).

adoptadas en *New York Times v. Sullivan*, supra, respecto a probar que se trata de imputaciones de hechos falsas y a el nivel de culpabilidad requerido, según sea el caso de figura pública o figura privada. *Hustler Magazine v. Falwell*, supra, págs. 51–52.

*Iguales fundamentos sustentan nuestra decisión de hoy en cuanto a que, por imperativo constitucional, no procede una reclamación de daños contra la prensa por informaciones que reflejen un ataque impersonal contra la gestión de gobierno o cualquier otra de trascendencia pública, por parte de aquellos encargados de dicha gestión, en ausencia de una referencia específica e individualizada sobre alguna persona y conforme a las normas constitucionales de responsabilidad aplicables.*

V

Ahora bien, en relación con la acción en daños objeto de la controversia que nos ocupa, en las noticias publicadas las imputaciones alegadamente difamatorias *no se dirigen de forma impersonal contra la gestión de gobierno, sino que se centran específicamente sobre una persona en particular, a quien se le imputa personalmente haber actuado de forma indebida.*

En términos constitucionales, se satisface el requisito de referencia específica en esta situación. El problema de si esta referencia específica permite *a los familiares del difamado* instar una acción en daños y perjuicios por las angustias mentales sufridas a causa de la publicación, *no está considerado en la doctrina constitucional vigente. Tenemos que recurrir al análisis y la ponderación de los intereses en conflicto para resolver esta controversia.*

Dispone el Art. 1802 del Código Civil, *supra*, que quien por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño

causado. "Nuestra jurisprudencia ha reconocido que el concepto de culpa del Art. 1802 es tan infinitamente amplio como cualquier falta de una persona que produce un mal o un daño." *Colón v. Romero Barceló*, supra, pág. 579. Véase *Bonilla v. Chardón*, 118 D.P.R. 599, 610 (1987).

> Según el citado artículo, que establece uno de los principios más fundamentales de nuestro orden jurídico—el de la responsabilidad aquiliana por hechos propios—todo perjuicio, material o moral, da lugar a reparación si concurren tres requisitos o elementos: primero, se establece la realidad del daño sufrido; segundo, existe un nexo causal entre el daño y la acción u omisión de otra persona; y tercero, dicho acto u omisión es culposo o negligente. ... Ese precepto "... no admite limitación ni excepción de clase alguna; y por consiguiente el causante de un daño debido a culpa o negligencia, sean las que sean sus consecuencias, está obligado a repararlo ...." Borrell, [*op. cit.*, pág.] 169. (Énfasis suprimido.) *Hernández v. Fournier*, 80 D.P.R. 93, 96–97 (1957). Véase *Reyes v. Sucn. Sánchez Soto*, 98 D.P.R. 305, 311–312 (1970).

En fin, "[e]l concepto de la culpa incluye todo tipo de transgresión humana tanto en el orden legal como en el orden moral". *Reyes v. Sucn. Sánchez Soto*, supra, pág. 313.

*Acorde con esta posición, concluimos que el citado Art. 1802 admite la causa de acción reclamada en el caso de autos* por tratarse de una alegación de *daños y angustias mentales* de la esposa del demandante.(⁵)

 Si el propio sujeto, objeto de las informaciones injuriosas, tiene derecho a un remedio en daños —por difamación o por daños y angustias mentales— a causa de las informaciones publicadas, su esposa, hijos o terceros que han sufrido daños y angustias mentales por las informaciones publicadas deben tener una causa de acción en daños y perjuicios.(⁶)

---

(⁵) No nos expresamos sobre si la sociedad de gananciales tiene tal causa de acción y si procede una acción de lucro cesante por no estar ello planteado en este caso.

(⁶) Es de notar que en la reciente decisión de este Tribunal, *Méndez Arocho v. El Vocero de P.R.*, supra, se resolvió que contrario a la tendencia mayoritaria vigente en

No podemos escaparnos de la realidad sociológica. y sicológica de que una esposa, hijos o padres de una persona que ha sido difamada, *por su relación con el así difamado*, también se pueden ver afectados por la publicación de la difamación.

A manera de ejemplo: los hijos, la esposa o los padres de una persona que ha sido difamada, al imputar le que es un "ladrón o un asesino", en ocasiones pueden sufrir daños y angustias mentales debido al rechazo social que se desarrolla contra ellos a causa de su relación con el difamado; por el estigma que ello conlleva; por los comentarios y actitudes negativas que se desarrollan contra él y su familia, y por la mera relación de parentesco. Tal realidad, aunque triste, es inescapable. Nuestro Derecho tiene que reconocer una causa de acción de ellos contra quien hizo tal difamación y causó los daños y angustias mentales. No podemos hacer justicia a medias.

No obstante, los elementos constitutivos de tal causa de acción deben ser armonizados con las disposiciones constitucionales a favor de la libertad de expresión y de prensa, particularmente en cuanto al grado de culpabilidad requerido, pues tal causa de acción es una contingente a la causa de acción principal que tiene el difamado. Regla 14.1 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III).

*Por ello, debe probarse que la información sobre el difamado es falsa y que, como producto de ésta, los terceros reclamantes sufrieron daños* reales. Véase *Maldonado y Negrón v. Marrero y Blanco*, 121 D.P.R. 705, 715

---

Estados Unidos, que rechaza el reconocimiento de acciones por difamación de los muertos, en nuestra jurisdicción, por disposición estatutaria expresa del Art. 2 de la Ley de Libelo y Calumnias de 1902 (32 L.P.R.A. sec. 3142), se reconoce una acción de libelo *a los parientes y amigos del fallecido difamado cuando se publica una difamación maliciosa sobre este último con la intención de denigrar o deprimir su memoria y de desacreditar o provocar a aquéllos.* Allí confirmamos la sentencia sumaria dictada en favor del demandado, pues los demandantes no demostraron que contaban con prueba para controvertir la del demandado y demostrar que éste actuó de manera intencional o con malicia crasa y grave menosprecio a la verdad.

(1988). Si la persona objeto de las informaciones injuriosas o el reclamante son funcionarios o figuras públicas,([7]) *es necesario, además, demostrar la existencia de malicia real, esto es, que las imputaciones contra el difamado fueron publicadas con conocimiento de su falsedad o con grave menosprecio de si eran ciertas o no.* Véanse: *Soc. de Gananciales v. López,* 116 D.P.R. 112 (1985); *Oliveras v. Paniagua Diez,* 115 D.P.R. 257 (1984); *García Cruz v. El Mundo, Inc.,* 108 D.P.R. 174 (1978); *Zequeira Blanco v. El Mundo, Inc.,* 106 D.P.R. 432 (1977); *Torres Silva v. El Mundo,* supra. Finalmente, serán opuestas a estas acciones por daños a causa de la difamación de un tercero todas aquellas defensas que, en virtud del derecho a la libertad de expresión y de prensa, el demandado ostente frente al tercero objeto de la difamación. Véase *Villanueva v. Hernández Class,* 128 D.P.R. 618 (1991).

En fin, se trata de causas de acción para las cuales no existirá el derecho a un remedio en aquellas situaciones *en las cuales el propio sujeto objeto de las informaciones injuriosas no tenga derecho él a un remedio en daños —por difamación o por daños y angustias mentales— a causa de las informaciones publicadas.*

Resolver lo contrario resultaría en reducir ese espacio vital para la expresión democrática en el cual opera hoy la prensa del país y alterar el equilibrio necesario entre el derecho del pueblo a expresar y difundir libremente ideas e informaciones y a recibirlas por vía de los medios de comunicación social, por un lado; y el derecho a estar protegido contra ataques abusivos a su honra, reputación y a la vida privada y familiar, por otro. Art. II, Secs. 1, 4 y 8, Const. E.L.A., L.P.R.A., Tomo 1.

---

([7]) Sobre la definición de figura pública, véanse: *Aponte Martínez v. Lugo,* 100 D.P.R. 282, 293 (1971); *Torres Silva v. El Mundo, Inc.,* supra; *García Cruz v. El Mundo, Inc.,* 108 D.P.R. 174 (1978); *Pueblo v. Olivero Rodríguez,* 112 D.P.R. 369 (1982); *Maldonado y Negrón v. Marrero y Blanco,* supra; *Ocasio v. Alcalde Mun. de Maunabo,* 121 D.P.R. 37 (1988); *Villanueva v. Hernández Class,* supra.

En consecuencia, no erró el tribunal de instancia al negarse a desestimar la acción incoada por la señora Mercado de Rodríguez. La doctrina de *of and concerning the plaintiff* no impide, de por sí, tal acción en daños y perjuicios *por cuanto hubo una referencia específica a la persona de su marido en la publicación.*

*Se dictará sentencia de conformidad.*