ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| DARLYE FARRAH CORONADO AYALA<br><br>Apelante<br><br>v.<br><br>NICOLE RODRÍGUEZ MONTALVO | KLAN202500336 | Apelación procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Caso Núm.: CA2018CV03593<br><br>Sobre: Derecho sobre la Propia Imagen; Daños y Perjuicios |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 28 de agosto de 2025.

Darlye Farrah Coronado Ayala solicita la revisión y revocación de la Sentencia que emitió el Tribunal de Primera Instancia, Sala de Carolina, el 17 de marzo de 2025. Mediante la referida sentencia, el foro primario declaró *Ha Lugar,* de forma parcial, la demanda que presentó Darlye Farrah Coronado Ayala. También declaró *Ha Lugar* la reconvención que presentó Nicole Rodríguez Montalvo.

Por las razones que exponemos, *confirmamos* la Sentencia apelada.

## I.

El 19 de diciembre de 2018, Darlye Farrah Coronado Ayala (Coronado Ayala o apelante) presentó una demanda contra Nicole Rodríguez Montalvo (Rodriguez Montalvo) por derecho a la propia imagen y daños y perjuicios. En síntesis, alegó que asistió a una cita para realizarse un maquillaje con la demandada Rodríguez

Número Identificador
SEN2025 _____

Montalvo. Mencionó que Rodríguez Montalvo le tomó unas fotos y el 4 de enero de 2018, sin su autorización, las publicó en las redes sociales. Manifestó que las fotos estaban alteradas para hacer un "antes y después", y que las publicaciones se hicieron con propósito comercial. Indicó que, a través de las plataformas de redes sociales, le requirió por escrito a la demandada que removiera las fotos y que la demandada no las removió. Adujo que las publicaciones de la demandada tenían gran alcance en las redes. Solicitó como remedio el pago de cien mil dólares ($100,000.00) por cada publicación, como daños por angustias y sufrimientos. Reclamó, además, la remoción de las fotos de las plataformas sociales y daños estatutarios, por una suma no menor de doscientos mil dólares ($200,000.00).

El 24 de marzo de 2019 Rodríguez Montalvo contestó la demanda e interpuso una Reconvención. Asintió que publicó en sus redes sociales los servicios que le brindó a la demandante. Que en la publicación, la demandante comenzó a escribir que había sido la peor experiencia de su vida, que se programó mal su cita, que fue humillada, que se le elevó el precio y otros improperios. La demandada-reconviniente señaló que la demandante la insultó, la tildó de mentirosa, falsa y descarada en las redes sociales, por lo que, sufrió humillación pública. Adujo que fue difamada, lo cual le causó un daño directo y real, ascendiente a cien mil dólares ($100,000.00).

Luego de otros trámites, el 30 de marzo de 2021, las partes rindieron un *Informe Sobre Conferencia Con Antelación Al Juicio Enmendado.* Finalmente, los días 14, 15, 16 de diciembre de 2022 y el 9 de noviembre de 2023, se celebró el juicio en su fondo.[1]

---

[1] SUMAC, entradas 96, 97, 104 y 115.

Tras evaluar la prueba, el 19 de marzo de 2025, el foro primario dictó sentencia, en la cual declaró *con lugar* ambas reclamaciones. Allí emitió las siguientes determinaciones de hechos:

1. El 29 de diciembre de 2017, la Sra. Coronado Ayala fue maquillada por la demandada, Sra. Rodríguez Montalvo, en su local ubicado en Carolina.

2. La demandante llegó tarde a la cita entre las partes el día acordado.

3. La demandante se puso muy molesta con la demandada, estaba altanera y amenazó a la demandada con escribirle *reviews* en las redes sociales.

4. Durante dicho servicio, la Sra. Rodríguez Montalvo tomó varias fotografías de la Sra. Coronado Ayala.

5. En adición, a las fotos tomadas durante el servicio a la demandante, se le tomaron ese día unas fotos en la Hacienda Siesta Alegre, lo que se desprende claramente de las comparaciones de las distintas fotos.

6. La demandante testificó en el juicio, que las fotos se tomaron en casa de su abuelo, contrario a lo testificado por la parte demandada y las comparaciones derivadas de las distintas fotos anejadas.

7. No existe un documento escrito donde se autorice por parte de la demandante a la publicación de fotos.

8. El 4 de enero de 2018, la Sra. Rodríguez Montalvo publicó dos fotos de la Sra. Coronado Ayala en sus redes sociales, Facebook e Instagram. Dichas fotos eran públicas por lo que cualquier persona podía accesar a las mismas.

9. Las referidas fotos se utilizaron para los propósitos comerciales de promover los servicios de maquillaje que ofrece la Sra. Rodríguez Montalvo.

10. La demandante escribió en Facebook, el 4 de enero de 2018, que no autorizaba a que se publicarán las fotos.

11. Los comentarios que escribió la demandante sobre las fotos que la demandada publicó el 4 de enero de 2018, incluyeron insultos y [e] sic, improperios, incluyendo que fue el peor momento de su vida y que la demandada y sus compañeros de trabajo, la hirieron y ofendieron verbalmente.

12. La demandada no tuvo pérdida de ingresos a raíz del comentario publicado por la parte demandante en

las fotos publicadas en las redes sociales (previamente estipulado en corte abierta).

13. La demandada, ese mismo día, bloqueó a la demandante de sus redes sociales y borró el mensaje al que se hace referencia.

14. La demandada no removió las fotos, al la demandante solicitar por escrito que se eliminarán las fotos de las redes sociales.

El foro primario expuso el derecho atinente a la propia imagen, a los daños y perjuicios, así como lo relacionado a la credibilidad de los testimonios. En el análisis de los hechos y el derecho, en síntesis, el foro de origen decretó que la demandada usó la imagen de la demandante para fines comerciales o publicitarios sin su consentimiento. Por estos actos, el foro de instancia indicó que la demandada incurrió en negligencia crasa, y otorgó el remedio estatutario de cien mil dólares ($100,000.00).

De igual manera, el tribunal primario evaluó la reconvención y expresó que le brindó credibilidad al testimonio de la demandada en el juicio, en especial al hecho de que se sintió humillada. Indicó el juzgador que, al unir la discusión que la demandante provocó con la demandada, y la publicación de los comentarios humillantes, la demandante actuó de forma intencional al publicar los insultos en contra de la parte demandada. Por ello, determinó que procedía el remedio estatutario de cien mil dólares ($100,000.00) por daño agravado a su imagen. Habida cuenta de su determinación, el tribunal de instancia decretó que los daños reclamados de ambas partes, eran de **igual magnitud**, por lo que ninguna de ellas tendría derecho al cobro de la indemnización otorgada.

En desacuerdo, la demandante interpuso un recurso de apelación ante este foro intermedio, en el que alegó que incidió el Tribunal de Primera Instancia, en lo siguiente:

**Primero:** Al determinar que una discusión o comentario de insulto e improperio constituye un acto ilegal por el cual se pueden reclamar daños.

**Segundo:** Al declarar con lugar la reconvención en difamación, solo probando que el alegado comentario era un "insulto" o "improperio", mas no difamatorio en sí.

**Tercero:** Al no hacer una determinación sobre si la Sra. Rodríguez Montalvo se considera o no una persona privada para poder entonces establecer el estándar a utilizar para determinar si hubo o no un acto difamatorio.

**Cuarto:** Al otorgar daños estatutarios en una reclamación de difamación.

**Quinto:** Abusó de su discreción el Tribunal de Primera Instancia en la cuantificación de los daños.

**Sexto:** Al no conceder cuantía alguna por concepto de costas, honorarios y gastos legales según obliga la ley número 139 del 13 de julio de 2011, 2011 LPRA 139 (2011) sobre el derecho a la propia imagen.

La apelada Rodríguez Montalvo presentó su alegato en oposición, por lo que, estamos en posición de resolver.

**II.**

**A.**

La Ley Núm. 139 de 13 de julio de 2011, "Ley del Derecho sobre la Propia Imagen", 32 LPRA secs. 3151-3158, provee una causa de acción contra la persona que utilice la imagen de otra sin el consentimiento previo de esta. A esos fines, los Artículos 3 y 4 del referido estatuto indican como sigue:

Artículo 3. Causa de Acción

Cualquier persona natural o jurídica que utilice la imagen de otra persona con fines o propósitos comerciales, mercantiles o publicitarios, sin el consentimiento previo de ésta, de la persona que posea una licencia sobre tal imagen, de los herederos en caso de haber fallecido o del agente autorizado de uno de éstos, responderá por los daños causados. En el evento de no obtenerse el consentimiento requerido en esta Ley, la persona afectada podrá presentar una acción para detener la utilización de dicha imagen y para recobrar los daños causados, incluyendo regalías dejadas de devengar o cualquier pérdida económica

resultante de la violación del derecho aquí establecido.

32 LPRA sec. 3152.

Artículo 4. Remedios

El propietario del derecho a la propia imagen que encuentre que el mismo ha sido violentado tendrá disponible el remedio de interdicto, así como una acción en daños y perjuicios. El Tribunal fijará la cuantía de los daños tomando como base los siguientes elementos: el beneficio bruto que hubiera obtenido la parte infractora mediante el uso de la imagen en cuestión; el importe de la ganancia que la persona perjudicada hubiere dejado de percibir como resultado de la actuación de la parte demandada; el valor del menoscabo que la actuación del demandado le hubiera ocasionado al demandante; y cualquier otro factor que a juicio del tribunal cuantifique adecuadamente los daños.

El tribunal, en su discreción, podrá fijar la cuantía de los daños en una cantidad que no exceda tres (3) veces la ganancia del demandado y/o la pérdida del demandante cuando determine que la violación fue intencional o de mala fe.

En la alternativa, el demandante podrá optar por solicitarle al tribunal, daños estatutarios. Los daños estatutarios podrán fijarse en una cuantía no menor de **$750 ni mayor de $20,000** por violación, según el tribunal lo considere justo. En un caso en el cual el tribunal determine que la violación fue intencional o debido a una negligencia crasa, el tribunal, en su discreción, **podrá aumentar** la cuantía de daños estatutarios a una suma no mayor de $100,000 por violación. Cada violación bajo estos daños estatutarios será equivalente al acto de la utilización ilegal de la imagen del reclamante en un trabajo, independiente del número de copias que se hagan del trabajo en cuestión en un momento dado.

Además, si el caso se resuelve a favor del titular del derecho, el tribunal siempre fijará la cuantía de las costas, honorarios y gastos del pleito a favor de éste.

Cuando el tribunal determine que el demandado desconocía y no tenía razón para saber o creer que sus actos constituían una violación a los derechos del demandante, el tribunal, en su discreción, podrá reducir la cuantía de daños.

Los remedios provistos por este Artículo son en adición a los remedios provistos por cualquier otro estatuto estatal o federal aplicable.

32 LPRA sec. 3153. (Énfasis nuestro).

**B.**

Nuestro ordenamiento jurídico reconoce el derecho de "toda persona a la protección contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar." Artículo II, Sec. 8, de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA Tomo 1; Ojeda v. El Vocero de P.R., 137 DPR 315, 327 (1994). Ver, además, lo establecido por el Artículo 1802 del Código Civil (1930), 31 LPRA ant. sec. 5141.[2]

En cuanto a la difamación, en el ámbito civil, esta se ha definido como "desacreditar a una persona publicando cosas contra su reputación". Pérez v. El Vocero de PR, 149 DPR 427, 441 (1999).  En nuestra jurisdicción, el Artículo 1802 del Código Civil, *supra*, según modificado por la doctrina constitucional, es la fuente de protección civil contra ataques difamatorios. Colón, Ramírez v. Televicentro de P.R., 175 DPR 690, 726 (2009).

El Artículo 1802 del Código Civil, *supra*, vigente al presentarse esta demanda, disponía que quien, por acción u omisión, cause daño a otro mediando culpa o negligencia, estaba obligado a repararlo.  En virtud de lo anterior, para reclamar el resarcimiento por los daños y perjuicios sufridos al amparo del artículo de referencia, un demandante debe establecer: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado, y (3) el acto u omisión, el cual tiene que ser culposo o negligente. Sucn. Mena Pamias et al. v. Meléndez et al, 212 DPR 758, 768 (2023); Cruz Flores et al. v. Hosp. Ryder et al., 210 DPR 465, 483-484 (2022); Pérez et al. v.

---

[2] El Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 1 *et seq.,* fue derogado por el Código Civil de Puerto Rico de 2020, aprobado mediante la Ley Núm. 55 de 1 de junio de 2020, según enmendada, 31 LPRA sec. 5311 *et seq*. No obstante, para fines del presente caso, se hace referencia únicamente al Código Civil de 1930 por ser la ley vigente al momento de presentarse esta acción.

Lares Medical et al., 207 DPR 965, 976 (2021); Nieves Díaz v. González Massas, 178 DPR 820, 843 (2010).  Se ha afirmado que el objeto del derecho tutelado en la acción por difamación es la reputación personal y el buen nombre del sujeto injuriado públicamente.  Colón, Ramírez v. Televicentro de P.R., *supra,* pág. 712, aludiendo a Sociedad de Gananciales v. El Vocero, 135 DPR 122, 127-128 (1994).  Por consiguiente, la reclamación por difamación puede estar contenida o inmersa dentro de una acción general de daños, pero no agota la totalidad de los remedios provistos por ésta. Íd.  La acción bajo el Artículo 1802 es más abarcadora que la acción por difamación porque permite que la persona perjudicada, además de ser compensada exclusivamente por la lesión causada a su reputación y a sus relaciones en la comunidad, sea resarcida por otros daños resultantes, como lo son las angustias mentales y morales. Íd.  En consecuencia, esta rama del derecho es parte integral de nuestro ordenamiento sobre la responsabilidad civil extracontractual, cuyos principios están recogidos en nuestro Código Civil. Colón, Ramírez v. Televicentro de P.R., *supra,* pág. 726.

De esta manera, nuestro ordenamiento ha reconocido la acción de daños y perjuicios por difamación.  Ésta es una acción torticera genérica que incluye tanto el libelo, que es la expresión escrita, como la calumnia, que es la expresión oral. Pérez v. El Vocero de PR, *supra*, pág. 441*;* Ojeda v. El Vocero de P.R., *supra*.

En vista de ello, aquella persona que reclame haber sido lesionado en su honor debe establecer que el demandado publicó una expresión falsa y difamatoria sobre la parte demandante, por lo cual sufrió daños, y que la conducta del demandado violó el estándar legal de conducta aplicable a las circunstancias particulares del caso, ya sea éste malicia real o negligencia. Colón,

Ramírez v. Televicentro de P.R., *supra*. En los casos de figuras privadas, la acción de libelo es una de daños y perjuicios basada en negligencia y no en malicia real que es el quantum de prueba exigido a la figura pública. Pérez v. El Vocero de PR*, supra*, pág. 442. En casos de libelo *per se* no se exige alegación ni prueba especial de daños. Íd. Se ha considerado libelosa de su propia faz la publicación que, "tienda a desacreditar, menospreciar, o deshonrar o a exponer a la persona al odio del pueblo o a su desprecio, o a privarle de la confianza pública y trato social, o a perjudicarle en sus negocios". Íd; ver, además, la Ley de Libelo y Calumnia, Ley del 19 de febrero de 1902, 32 LPRA sec. 3142. La prueba de la malicia real o de la negligencia debe ser clara, robusta y convincente. Colón, Ramírez v. Televicentro de P.R., *supra*, pág. 725.

De este modo, nuestro ordenamiento jurídico le reconoce al perjudicado el derecho a defender su nombre ante los demás protegiendo las relaciones que sostiene con terceros; la probabilidad de relaciones futuras con terceros; a proteger su imagen pública en general y evitando una futura imagen pública negativa. Soc. de Gananciales v. El Vocero de P.R., *supra*, págs. 126-127.

### C.

En cuanto a la evaluación y suficiencia de la prueba, la Regla 110 de Evidencia de Puerto Rico, 32 LPRA, Ap. VI, establece los principios que el juzgador deberá evaluar a la hora de determinar cuáles hechos quedaron establecidos, entre ellos:

(A) El peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes.

(B) La obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en el asunto en controversia.

(C) Para establecer un hecho, no se exige aquel grado de prueba que, excluyendo posibilidad de error, produzca absoluta certeza.

(D) La evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho[.]
[…]

(F) En los casos civiles, la decisión de la juzgadora o del juzgador se hará mediante la preponderancia de la prueba a base de criterios de probabilidad, a menos que exista disposición al contrario.

Vale destacar que toda sentencia dictada por un tribunal tiene a su favor una presunción de validez y corrección. López García v. López García, 200 DPR 50, 59 (2018). De igual manera, en nuestro ordenamiento jurídico, "es principio reiterado que los tribunales apelativos otorgarán deferencia a las determinaciones de hecho, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los tribunales de primera instancia". SLG Rivera-Pérez v. SLG Díaz-Doe et al., 207 DPR 636, 657 (2021). Esta norma aplica, salvo que medie error manifiesto, pasión, prejuicio o parcialidad y, por ende, abuso de discreción. Sucn. Mena Pamias et al. v. Meléndez et al., *supra*, pág. 774; Pueblo v. Hernández Doble, 210 DPR 850, 864 (2022); SLG Fernández-Bernal v. RAD-MAN et al., 208 DPR 310, 338 (2021).

En ese aspecto, como norma general, los foros apelativos evitarán, "sustituir las determinaciones de hecho que hace un foro inferior debido a que este es quien ve y escucha a los testigos, y, por ende, está en mejor posición de evaluar y aquilatar la prueba presentada en el juicio." SLG Rivera-Pérez v. SLG Díaz-Doe et al., *supra*, pág. 658; Dávila Nieves v. Meléndez Marín, 187 DPR 750, 770-771 (2013); SLG Rivera Carrasquillo v. AAA, 177 DPR 345, 356 (2009). Por ello, cuando la evidencia directa de un testigo le merece entero crédito a este, ello es prueba suficiente

de cualquier hecho. <u>Sucn. Rosado v. Acevedo Marrero</u>, 196 DPR 884, 917 (2016).

Por otra parte, y en consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando un peticionario señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, esa parte habrá de presentar de lo ocurrido en el foro primario utilizando alguno de los mecanismos de recopilación de prueba oral. <u>Pueblo v. Pérez Delgado</u>, 211 DPR 654, 671 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. Íd. La ausencia de la transcripción imposibilita que responsablemente los foros revisores puedan descartar la apreciación razonada y fundamentada de la prueba que realizó el juzgador de los hechos. Íd., pág. 674.

Para ejercer esta facultad revisora, nuestro reglamento establece unos requisitos procesales con los cuales las partes deben cumplir. Específicamente cuando la parte alegue errores en la apreciación de la prueba testifical y pericial que hiciera el Tribunal de Primera Instancia, es preciso que se cumplan ciertos requisitos que tienen el propósito de poner al tribunal revisor en condición de realizar dicha tarea. Sobre ese particular, la Regla 19 del Reglamento del Tribunal de Apelaciones, según enmendado, *In Re*: Reglamento del Tribunal de Apelaciones, 2025 TSPR 042, 215 DPR ____ (2025), dispone en lo pertinente como sigue:

> (A) Cuando la parte apelante haya señalado algún error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de esta por parte del tribunal apelado, deberá reproducir la prueba oral, de conformidad con lo dispuesto en la

Regla 76 de este Reglamento. Cuando promueva la disposición rápida y eficiente del recurso, el Tribunal de Apelaciones podrá relevar a las partes de reproducir la prueba oral, y requerir que sometan la regrabación del procedimiento en el tribunal apelado, detallando las porciones de la grabación concernientes al error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de esta.

(B) La parte apelante deberá acreditar, dentro del término de diez días siguientes a la presentación de la apelación, que el método de reproducción de la prueba oral que utilizará es el que propicia la más rápida dilucidación del caso, pudiendo el tribunal determinar el método que alcance esos propósitos.

Cuando se presente la prueba testifical, la intervención con esta procedería en casos en los que, luego de un análisis integral de la prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia. Sucn. Rosado v. Acevedo Marrero, *supra*, págs. 917-918; Rivera Menéndez v. Action Service, 185 DPR 431, 444 (2012); SLG Rivera Carrasquillo v. AAA, *supra*, pág. 356; Flores v. Soc. de Gananciales, 146 DPR 45, 49 (1998).

**D.**

Con relación a la valorización de los daños, el Tribunal Supremo ha expresado en múltiples ocasiones que se trata de una tarea sumamente difícil, ardua y angustiosa, ya que no existen fórmulas científicas que provean un resultado exacto para indicar cómo se justiprecia el dolor y el sufrimiento causado. Sucn. Mena Pamias et al. v. Meléndez et al, *supra*, pág. 769; Santiago Montañez v. Fresenius Medical, 195 DPR 476, 490 (2016); Herrera, Rivera v. S.L.G. Ramírez-Vicéns, 179 DPR 774, 791 (2010); Vázquez Figueroa v. ELA, 172 DPR 150, 154 (2007).

Para la valoración de los daños, el juzgador descansa, en parte, en su **sentido de justicia** y de conciencia humana. Sucn. Mena Pamias et al. v. Meléndez et al, *supra*; Santiago Montañez v. Fresenius Medical, *supra*, pág. 488. (Énfasis nuestro). Es por

ello, que nuestro máximo tribunal ha reiterado que los tribunales apelativos no debemos intervenir con la valoración de daños que realiza el foro primario, salvo cuando la cuantía concedida resulte ridículamente baja o exageradamente alta. Meléndez Vega v. El Vocero de PR, 189 DPR 123, 203 (2013). Al momento de valorar los daños, los foros sentenciadores, deben también tomar en cuenta las particularidades del caso que tienen ante sí; teniendo presente, claro está, que no todos los casos son iguales, y que la experiencia humana ante acontecimientos similares puede variar significativamente. Sucn. Mena Pamias et al. v. Meléndez et al, *supra*, pág. 775*.*

**E.**

Por último, es menester referirnos a la figura de la compensación, plasmada en el entonces vigente Código Civil. Este cuerpo reconocía la compensación como una de las causas de extinción de las obligaciones. Artículo 1110 del Código Civil, 31 LPRA, ant. sec. 3151[3]. Tendrá lugar la compensación cuando dos personas, por derecho propio, sean recíprocamente acreedoras y deudoras la una de la otra. Artículo 1149 del Código Civil, 31 LPRA ant. sec. 3221.

La compensación en términos coloquiales, equivale a "nivelar o igualar el efecto de una cosa con el efecto opuesto de otra cosa contraria. Jurídicamente se habla de compensar en sentido amplio como equivalente de indemnizar o resarcir el daño o los perjuicios inferidos a cualquier persona." Ruth E. Ortega-Vélez, Diccionario de Palabras y Frases: Derecho Puertorriqueño, Ediciones SITUM, Quinta Edición Revisada, agosto 2022, pág. 47.

---

[3] Actual Artículo 1144 del Código Civil de 2020, 31 LPRA sec. 9221.

En derecho de obligaciones, "la compensación puede definirse como la extinción de dos obligaciones que, existentes en sentido inverso entre las mismas personas, se reputan pagadas, totalmente o hasta la concurrencia de la más débil, según que la cifra de la una sea igual o no a la de la otra. Cada uno de los acreedores se paga reteniendo lo que se debe. Es el modo de extinguir en la cantidad concurrente las obligaciones de aquellas personas que por derecho propio sean recíprocamente acreedoras y deudoras la una de la otra." Íd.

El Artículo 1156 de Código Civil, 31 LPRA ant. sec. 3228, dispone que, "[e]l efecto de la compensación es extinguir una y otra deuda en la cantidad concurrente, aunque no tengan conocimiento de ella los acreedores y deudores."

### III.

En los primeros tres señalamientos de error, la apelante Coronado Ayala planteó que el foro primario debió determinar si la reconviniente era una persona pública o privada para determinar si ocurrió un acto difamatorio. Aun así, indicó que el foro de instancia nunca determinó que hubiese difamación. Arguyó, además, que la demandada, Rodríguez Montalvo, fue quien promovió sus servicios comerciales con su foto. Expuso que el mensaje que escribió en las redes no fue difamatorio, sino que se tratan de una reseña "review", como cliente, por un servicio recibido. Además, alegó que el foro primario dictaminó en la sentencia que la señora Rodríguez Montalvo borró inmediatamente sus expresiones[4], las que no fueron difamatorias.

---

[4] La apelante indicó que su publicación fue la siguiente:

"La peor experiencia de mi vida. Yo soy la chica de la foto, la novia. Piensen 2 veces en pagar los servicios de esta persona y confiarle el día más importante de su vida. En resumidas cuentas, porque entrar en todos los detalles sería revivir el momento más tormentoso y ansioso que he tenido. Nicole Rodríguez programó mal mi cita y tuvo desinformación de su secretaria y NO me quería

La apelada, por su parte, expuso que la demandante, al contestar la reconvención, no presentó la defensa afirmativa respecto a si la demandada era, o no, una figura pública. Adujo que la demandante tampoco demostró en el juicio que la apelada era una figura pública para que el tribunal realizara algún análisis sobre ese particular. Señaló que la normativa vigente al presentarse la demanda era el Artículo 1802 del Código Civil, 31 LPRA ant. sec. 5141, para el cual debe existir un acto u omisión culposo o negligente, un daño y el nexo entre el acto u omisión y el daño. Indicó que el foro primario realizó ese análisis dentro del marco de la ley y la jurisprudencia.

Evaluamos.

Los hechos que informa esta causa establecen que Coronado Ayala demandó a Rodríguez Montalvo porque esta publicó en las redes sociales unas fotos suyas, sin estar autorizada para ello.

En respuesta, Rodríguez Montalvo interpuso una reconvención en daños por difamación contra Coronado Ayala

---

atender. Salió con una actitud humillante y altanera en donde me hirió y ofendió verbalmente porque según ella llegué minutos tarde cosa que NO es cierta. Me humilló, me subió el precio un 70% para atenderme y me vi en la obligación de aguantar y pagar porque esto ocurrió a pocas horas de encontrarme con mi *fiance* ahora esposo, la familia, la fotógrafa... en fin, el día más importante de mi vida. Nunca ocurrió la conversación que Nicole escribe en este post. Les aseguro que nunca cumplió mis expectativas ya que es una pena que su maquillaje se vio manchado con una experiencia tan nefasta. Nicole, no le mienta a sus seguidores/clientes. Le dije expresamente que no podía utilizar mi foto, imagen, ni video. Mucho menos para fines comerciales y/o publicitarios. Utiliza mi imagen para mentir y enviar una falsa representación a sus servicios y mi experiencia. Usted tomó mi foto representando que la necesitaba para fines personales para saber cómo contrastaba mi piel y maquillaje con las fotos. Si usted no hubiese tenido el descaro de usar mi imagen para mentirle a sus seguidores, yo hubiese mantenido mi terrible experiencia en privado. Recuerde que el Tribunal Supremo de Puerto Rico establece una oficina como un lugar donde el cliente tiene expectativa de privacidad. Por este medio formalmente le repito que usted NO tenía ni tiene autorización para utilizar mi imagen, mucho menos para hacer un anuncio engañoso. Remueva mis fotos, no les mienta a sus clientes y demás está decirle que me debe unas disculpas. A sus seguidores, ojalá su experiencia sea positiva y no tengan que terminar en el Tribunal."

porque la demandante publicó unos comentarios en las redes sociales que la hicieron sentir humillada públicamente.

Surge de la Sentencia que al foro primario **no** le mereció credibilidad el testimonio de la demandante, por entenderlo mendaz.[5] En cambio, sí le brindó credibilidad al testimonio de la demandada-reconviniente.[6] En la sentencia el foro primario aludió a las alegaciones de la reconvención. En particular mencionó que la demandante y la demandada tuvieron una discusión en el local en el que trabaja la demandada y que, en esa discusión la demandante amenazó a la demandada con que "[P]ondría a la **luz en las redes sociales**, lo acontecido entre ellas y que tiraría el negocio al piso". Entendió el foro primario que, como la demandante intimidó a la demandada con que iba a publicar la discusión en las redes sociales, se podía notar que la demandante tenía la intención de dañar la imagen de la demandada. El foro primario concluyó que la demandada pudo justificar sus alegaciones y concedió el remedio solicitado, al razonar lo siguiente:

> La demandada también alega en la reconvención que la demandante escribió el comentario en FACEBOOK, con intención y con pleno conocimiento de las falsedades que publicó y con conocimiento de los insultos y **negligencia crasa** al momento de exponer públicamente los improperios y la **difamación** que realizó **en contra de la demandante**. **La demandada pudo justificar sus alegaciones al la misma demandante haber anejado evidencia de sus comentarios publicados en contra de la demandada, evidencia que fue aceptada por el tribunal**. El tribunal le brinda credibilidad al testimonio de la demandada en el juicio en especial al hecho de **que se sintió humillada**. Al unir la discusión que la demandante provocó con la demandada y **la publicación de los comentarios humillantes la semana próxima el tribunal concluye que la demandante actuó de forma intencional al publicar los insultos en contra de la parte demandada**, por lo que procede el remedio

---

[5] Sentencia, pág. 11, SUMAC, entrada 125.
[6] Íd, pág. 12.

estatutario de $100,000 por daño agravado a su imagen. (Énfasis nuestro, citas al calce omitidas).

A base de este extracto del dictamen impugnado, el Tribunal determinó que la demandada pudo demostrar las alegaciones de daños. Estas aludían a que la demandante realizó una publicación falsa y difamatoria contra la demandada. A su vez, el foro primario, al impartirle credibilidad al testimonio de la demandada, expresó que quedó convencido de que esta se sintió humillada. Incluso, en la determinación de hechos número once (11), el foro primario plasmó que los comentarios de la apelante incluyeron insultos e improperios.

Estas expresiones, según las plasmó el foro primario en la sentencia que revisamos, convalidan la acción en daños aquí impugnada. Hubo una expresión escrita falsa y difamatoria, considerada como un ataque a la reputación y honra de la demandada, que hicieron sentir a la demandada-reconviniente de forma humillada. La publicación rebasó un mero acto negligente, para convertirse en negligencia crasa, tal como lo describió el tribunal. Esto, nos lleva a concluir que la demandante actuó de forma maliciosa. De esta forma se cumplió con los requisitos de una acción en daños y perjuicios, al existir un acto culposo o negligente que causó un daño.

Aun cuando el foro primario no mencionó en la sentencia si la demandada era una figura pública o privada, al disponer del pleito aplicó la teoría general de daños, que es más abarcadora, y cumplió con los requisitos de esa acción.[7] La publicación que realizó la demandante se entiende libelosa *per se*, pues claramente reflejó que buscaba deshonrar y perjudicar a la demandada en su negocio. Así que, ya sea como persona pública

---

[7] Véase Colón, Ramírez v. Televicentro de P.R., supra, pág. 712.

o privada, la determinación del foro primario cumple con la figura de difamación contenida en nuestro estado de derecho, lo cual merece nuestra deferencia.

Resalta además que el recurso ante nuestra consideración quedó sometido sin el beneficio de la exposición narrativa o la transcripción de la prueba que requiere nuestro Reglamento. En conclusión, en ausencia de circunstancias extraordinarias, o ausencia de indicios de pasión, perjuicio, parcialidad o error manifiesto, la adjudicación de credibilidad y las apreciaciones de la prueba que realizó el Foro de Instancia, merecen nuestra deferencia. El foro primario aplicó el derecho de forma adecuada y emitió la debida decisión. En consecuencia, concluimos que los primeros tres errores no fueron cometidos.

En el cuarto señalamiento de error, Coronado Ayala indicó que incidió el foro primario al concederle daños estatutarios a Rodríguez Montalvo por la cantidad de cien mil dólares ($100,000.00). Mencionó que las partes habían estipulado que el comentario que plasmó la demandante no le causó daño económico a Rodríguez Montalvo ni a su negocio. Adujo que la cuantía otorgada por cien mil dólares ($100,000.00) es exageradamente alta. Revisamos.

El Tribunal evaluó la reclamación de la **demandante** al amparo del derecho a la propia imagen y la acción de la demandada basada en el concepto de daños y perjuicios. El tribunal decretó que ambas partes incurrieron en negligencia crasa con sus acciones y aprobó ambos petitorios.

En consecuencia, el foro primario adjudicó la suma máxima discrecional de cien mil dólares ($100,000.00) a la demandante Coronado Ayala por los daños sufridos, a tenor con el Artículo 4 de la Ley de la Propia Imagen. A su vez, a la demandada

Rodríguez Montalvo, el foro primario le concedió en daños la misma suma de cien mil dólares ($100,000.00) como remedio estatutario.

En el dictamen, el foro plasmó que le adjudicaba a cada parte los cien mil dólares ($100,000.00) por los daños sufridos. Agregó que, "Por los daños reclamados entre ambas partes ser **de igual magnitud**, **ninguna** de las partes tendrá derecho al cobro de la indemnización otorgada."[8]

Como vemos, el foro primario concedió, dentro del marco de su discreción, la misma compensación económica para ambas partes, por entender que las reclamaciones tenían la misma magnitud. Este razonamiento, resulta apropiado, razonable, no ha sido rebatido y no amerita nuestra intervención. Más aun cuando se ha reiterado que para la valoración de los daños, el juzgador descansa, en parte, en su sentido de justicia y de conciencia humana.[9]

De tener que revisar la cuantía otorgada en daños a la demandada, estaríamos obligados a realizar similar ajuste con la compensación que se le concedió a la demandante, bajo el criterio de igualdad.

No obstante, este ejercicio resultaría fútil, pues, como reseñamos, el foro primario determinó que **ninguna** de las partes tendrá derecho al cobro de la indemnización. Esto implica que, al considerar ambas reclamaciones en igual magnitud, las partes se convierten en acreedoras y deudoras la una de la otra. De esta manera, ambas reclamaciones quedan canceladas entre sí y extintas. Por consiguiente, no procede el resarcimiento económico derivado de ambas causas de acción.

---

[8] Sentencia, pág. 13.
[9] Ver *Sucn. Mena Pamias et al. v. Meléndez et al., supra*.

En el último señalamiento de error, la apelante alegó que el Artículo 4 de la Ley sobre la Propia Imagen exige que el tribunal conceda costas, honorarios y gastos si la demanda fue declarada *Ha Lugar.* Indicó que esa partida no es discrecional. Revisamos.

Somos conscientes de que el Artículo 4 de la Ley del Derecho sobre la Propia Imagen, establece que, "si el caso se resuelve a favor del titular del derecho, el tribunal siempre fijará la cuantía de las costas, honorarios y gastos del pleito a favor de éste." 32 LPRA sec. 3153. Ahora bien, este artículo lo analizamos en conjunto a la Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1, que también provee para que, en el término de diez (10) días, la parte a cuyo favor se resuelva el pleito, presente el memorando de todas las partidas de gastos y desembolsos necesarios incurridos durante la tramitación del pleito o procedimiento. La referida regla igualmente permite una compensación de honorarios de abogado por temeridad.

Según expusimos, ambas partes resultaron victoriosas en sus reclamos, por lo que tendrían derecho al recobro de costas, gastos, así como, pudiesen aspirar a honorarios de abogado. Sin embargo, en este caso quedó convalidado que ninguna de las partes tenían derecho a recibir la compensación monetaria. Ante esta realidad, resulta ineficaz e inconsecuente, la concesión de costas, gastos y honorarios de abogado. El error no fue cometido.

Independientemente a ello, para reclamar las costas, una vez dictada la sentencia, las partes tenían diez (10) días para someter el correspondiente memorando. No surge del expediente que la apelante cumpliera con este requisito.

**IV.**

Por las razones aquí expresadas, se *confirma* la sentencia aquí apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones